[Civ. No. 15185. Third Dist. Mar. 31, 1976.]

ROBERT LEE et al., Plaintiffs, Cross-defendants and Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant, Cross-complainant and Appellant.

COUNSEL

Phillip A. Cooke, Steel & Arostegui, Islip & Cooke, Terence J. Keeley and Keeley, Guthrie & Ruddick for Plaintiffs, Cross-defendants and Appellants.

Rich, Fuidge, Dawson, Marsh, Morris, Sanbrook, Grove, Hill & Iverson and Chester Morris for Defendant, Cross-complainant and Appellant.

OPINION

**EVANS, J.**—Plaintiffs appeal from that portion of a summary judgment which declared valid provisions in automobile insurance policies issued by defendant requiring plaintiffs to reimburse defendant for certain medical payments received by plaintiffs pursuant to the insurance agreement.

Defendant appeals from that portion of the judgment which required it to pay a pro rata share of attorney's fees incurred by plaintiffs in securing a settlement or recovery out of which the reimbursement was required.

The following facts are not in dispute: from May 1965, through and including February 1968, the automobile insurance policies issued by defendant contained the following provisions:

"COVERAGE C—Medical Payments. To pay reasonable medical expenses incurred within one year from the date of accident:

"· . . . . . . . . . . . . . . . .

"POLICY CONDITIONS—APPLICABLE TO ALL
 COVERAGES UNLESS OTHERWISE NOTED

"· . . . . . . . . . . . . . . . .

"4. Subrogation. Upon payment under coverages A, B, D, D-50, F, G, H, and division 1 of W-1 and W-2 of this policy the company shall be subrogated to all of the insured's rights of recovery therefor and the

insured shall do whatever is necessary to secure such rights and do nothing to prejudice them.

"Upon payment under coverages C, M and division 3 of W-1 and W-2 of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

In February 1968, the policies of automobile insurance issued by defendant through the month of October 1968, contained the following provision with reference to subrogation:

"POLICY CONDITIONS—APPLICABLE TO ALL
 COVERAGES UNLESS OTHERWISE NOTED

". . . . . . . . . . . . . . . ". . . . .

"4. Subrogation. Upon payment under coverages A, B, D, D-50, F, G, H, and division 1 of W-1 and W-2 of this policy the company shall be subrogated to all of the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them.

"Upon payment under coverages C, M and division 3 of W-1 and W-2 of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person or anyone receiving such payments may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

During October 1968 and thereafter, all policies issued by defendant contained the following two separate provisions providing for reimbursement:

## "Policy Conditions

"`·` · · · · · · · · · · · · ·· · · · ·

"4. Subrogation. Upon payment under this policy, except under coverages C, M, S and T, the company shall be subrogated to all the *insured's* rights of recovery therefor and the *insured* shall do whatever is necessary to secure such rights and do nothing to prejudice them.

"Upon payment under coverages C and M of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured *person* or anyone receiving such payment may have against any *person* or organization and such *person* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such *person* shall do nothing after loss to prejudice such rights.

"5. Trust Agreement-Coverages C, M and U. In the event of payment to any *person* under coverage C, M or U:

"(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such *person* against any *person* or organization legally responsible for the *bodily injury* because of which such payment is made;

"(b) such *person* shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other *person* or organization because of the damages which are the subject of claim made under the coverages;

"(c) such *person* shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

"(d) if requested in writing by the company, such *person* shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other *person* or organization, such action to be taken in the name of such *person;* in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

"(e) such *person* shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such *person* and the company established by this provision." (Italics in original.)

Pursuant to cross-motions for summary judgment, the trial court rendered its judgment in favor of defendant on the question of the validity of the subrogation or reimbursement provisions of the various insurance policies. In so doing, the trial court stated in its ruling:

"The second issue is as to the validity of the various provisions of Section C & M in the State Farm policies. California in West vs. State Farm 30 CA3d 562 (January 1973) holds that the State Farm's SUBROGATION was not to the cause of action but to the proceeds of the recovery."

The court in its "RULING ON MOTION FOR SUMMARY JUDGMENT" found in plaintiffs' favor on the question of the defendant's obligation to share pro rata in plaintiffs' attorney's fees incurred in pursuing their right of recovery against third parties. In so doing, the court stated:

"It would seem patently unfair to have the insured expend costs and attorneys fees and then have his net recovery substantially diminished either in amount or in proportion by these amounts resulting from the collection in full by State Farm or from State Farm being relieved of their contractual obligation to make the 'medical payments' without compensating the insured proportionately for his costs.

" . . . . . . . . . . . . . . . . . . .

"The thrust of State Farm's argument is that State Farm does not have the right to sue and thus can have no interest in a common fund. This Court recognizes that in the cited decided appellate cases there has existed the right to sue by the party upon whom the doctrine was applied. This Court acknowledges that allowing the application of common fund doctrine in reimbursement cases is an extension of that doctrine. Since the doctrine is one of equity, equity clearly demands that where State Farm has a substantial interest either in amount or in proportion in the monies recovered, they should pay their proportionate costs."

These cross-appeals ensued presenting for our determination the following questions:

(1) Are the policy provisions requiring reimbursement of medical payments void as an attempt to assign a cause of action for personal injury; and (2) should the "common fund theory" extend to defendant, requiring it, under the reimbursement provisions, to bear a pro rata share of attorney's fees and costs incurred by its insured in securing a settlement or recovery against a third party tortfeasor.

I

The Supreme Court, while considering a similar situation between an insurance carrier and one of its insureds set forth the basic and sound policy to be applied: "The Supreme Court of California has long adhered to the doctrine that if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor. (See, e.g., *Peri* v. *Los Angeles Junction Ry. Co.* (1943) 22 Cal.2d 111, 131 [137 P.2d 441].) As recently as August 1968 we unanimously reaffirmed our adherence to this doctrine, which is known as the 'collateral source rule.' (*De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 223-227 [70 Cal.Rptr. 550, 444 P.2d 342]; see *City of Salinas* v. *Souza & McCue Constr. Co., supra,* 66 Cal.2d 217, 226 [57 Cal.Rptr. 337, 424 P.2d 921].)" (Fn. omitted.) (*Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61].)

In *Helfend,* plaintiff had been injured by a Rapid Transit District bus. A portion of his medical bills had been paid from a collateral source, and the defendant argued that the trial court erred by refusing to allow evidence that a portion of plaintiff's medical bills had been satisfied by a collateral source. The court in considering these circumstances said:

"The collateral source rule as applied here embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. The tortfeasor should not garner the benefits of his victim's providence.

"The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Courts consider insurance a form of investment, the benefits of which become payable without respect to any

other possible source of funds. If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance." (Fn. omitted.) (*Id.,* at pp. 9-10.)

Although not there at issue, the court commented on the rights of the insurer in the insured's benefits of a tort recovery, stating: "Furthermore, insurance policies increasingly provide for either subrogation or refund of benefits upon a tort recovery, and such refund is indeed called for in the present case. (See Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law, supra,* 54 Cal.L.Rev. 1478, 1479.) Hence, the plaintiff receives no double recovery; the collateral source rule simply serves as a means of by-passing the antiquated doctrine of nonassignment of tortious actions and permits a proper transfer of risk from the plaintiff's insurer to the tortfeasor by way of the victim's tort recovery. The double shift from the tortfeasor to the victim and then from the victim to his insurance carrier can normally occur with little costs in that the insurance carrier is often intimately involved in the initial litigation and· quite automatically receives its part of the tort settlement or verdict." (Fns. omitted.) (*Id.,* at pp. 10-11.)

█ As argued by plaintiffs, it is well established in California that an assignment of a cause of action for personal injuries is void and in the absence of statutory authority, a cause of action for personal injury is not subject to subrogation. (*Block* v. *Cal. Physicians' Service* (1966) 244 Cal.App.2d 266, 270 [53 Cal.Rptr. 51].) However, the court in *Block* stated, at page 273: "By becoming a member of the plan under a Group Health Service agreement plaintiff has voluntarily associated himself with the public policy of this state. While he has a right to seek to be made whole, it is unfair for him to seek enrichment by double recovery which would result from retention of all proceeds of the settlement of his suit . . . and of all medical and hospital benefits paid to him by defendant Service under its [insurance] agreement—for the same injuries—all eventually at the cost of the participating members of the plan." █ It has been clearly established in California that insurance contract provisions, although classified as adhesion contracts, requiring reimbursement of medical payments under the label of subrogation but providing only access to the proceeds of settlement or judgment resulting from the exercise of rights of recovery by the injured person, are valid

and enforceable. (*Block* v. *Cal. Physicians' Service, supra; West* v. *State Farm Mut. Auto. Ins. Co.* (1973) 30 Cal.App.3d 562 [106 Cal.Rptr. 486].)

Plaintiffs place emphasis upon the fact that each of the challenged provisions is prefaced by the label "subrogation." Subrogation or assignment of a cause of action for personal injury operates to transfer from one person to another that cause against a third party. The reasons of policy against the assignment or subrogation of certain personal causes do not apply to insurance policy provisions that merely require the insured to reimburse the insurer out of any recovery or settlement. Plaintiffs have stressed the use of the word "subrogation" in the insurance agreement while arguing against the requirement that the insured execute and deliver instruments and papers and do whatever else is necessary in order to secure the insurers' rights labeled "subrogation." The right of subrogation contained in each contract is stated to be ". . . to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which *the injured person or anyone receiving such payment* may have against any person or organization . . . ." (Italics added.) The argument that the provision under attack is an assignment or true subrogation obviously fails. Substance rather than form is the determining factor. The right given to the insurer according to the terms of the policy is not to the chose in action but is to the proceeds of any settlement or judgment resulting from the exercise of the injured party's rights of recovery against a third party tortfeasor. The right of repayment, reimbursement or subrogation does not arise until the proceeds of settlement or judgment come into existence.

Upon reviewing a virtually identical reimbursement provision, the court in *West* v. *State Farm Mut. Auto. Ins. Co., supra,* 30 Cal.App.3d at page 566, stated, "The provision is within the bounds of validity as established in *Block* v. *Cal. Physicians' Service, supra.*"

The trial court properly held valid the so-called subrogation provisions of defendant's insurance policies.

## II

■ Defendant State Farm Mutual Automobile Insurance Company appeals from that portion of the summary judgment awarding plaintiffs a pro rata share of their litigation costs and attorney's fees expended in procuring a settlement or recovery possible third party tortfea-

sors. It is conceded that some of the plaintiffs were required to pay attorney's fees and costs in their process of securing settlement or recovery from which reimbursement was required. In support of its argument against the imposition of a pro rata share of such costs, defendant contends that its contracts of insurance do not provide for payment of any portion of its insureds' attorney's fees incurred while pursuing their personal right of recovery against third persons. Defendant asserts that in the absence of a controlling statute or an agreement between the parties, attorney's fees are generally not awarded to successful litigants. Defendant argues that the basic policy on attorney's fees is embodied in section 1021 of the Code of Civil Procedure which provides in pertinent part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; . . ."

Here attorney's fees are not required by statute nor has the defendant contracted with its insureds to participate on a pro rata basis in any attorney's fees they incur in their attempts to procure recovery or settlement against third parties.

However, under certain circumstances, the inherent equitable powers of the court have been utilized to create exceptions to the basic rule on attorney's fees. The prime example is the "common fund" exception as described by the Supreme Court in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10]. The court there, at page 25, stated: "[W]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." Preceding *D'Amico,* the Supreme Court of California, in expounding upon the policy behind the application of a common fund theory requiring apportionment of costs and attorney's fees, stated in *Estate of Stauffer* (1959) 53 Cal.2d 124, at page 132 [346 P.2d 748], "The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently

prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful." The application of this equitable doctrine has been recently further extended by the Supreme Court in *Quinn* v. *State of California* (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761]. In that case, plaintiff, an injured employee, recovered judgment against a third party tortfeasor against which judgment his employer's insurer claimed a lien for the amount of workers' compensation benefits paid. (Lab. Code, § 3856.) The insurer did not otherwise participate in the proceeding. Plaintiff there recovered a substantial judgment and following trial, the liability insurance carrier reduced the amount of the recovery by deducting from the judgment the amount of workers' compensation benefits received by the plaintiff. Plaintiff sought an order apportioning his attorney's fees between himself and the insurer, contending that his attorney had exclusively performed the work leading to the recovery. The Supreme Court, in invoking the equitable common fund theory, stated, "Although American courts, in contrast to those of England, have never awarded counsels' fees as a routine component of costs, at least one exception to this rule has become as well established as the rule itself: that one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs. Articulating the policies underlying this rule and its exception, a prominent scholar of the problems of unjust enrichment has noted that the denial of an attorney's fee to a prevailing litigant 'is a partial denial of justice.' (Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds* (1974) 87 Harv.L.Rev. 1597.)

" . . . . . . . . . . . . . . . . . . .

"The instant case therefore might well constitute an appropriate situation for the application of the rule of apportionment, even without reference to the statute. An active litigant has, by bringing and winning this lawsuit, created a fund upon which a nonparticipant in the litigation can draw in order to relieve himself of a legal obligation he would otherwise bear; the passive beneficiary thus necessarily benefits from plaintiff's efforts in bringing suit. . . ." (Fns. omitted.) (*Id.,* at pp. 167-169.)

Defendant argues that *Quinn* should be distinguished inasmuch as a statutory provision was involved relating to payment of reasonable attorney's fee to the employee's attorney. We do not agree. The Supreme

Court's decision in *Quinn* indicates the obvious, that is, that the Legislature incorporated into its statute the equitable doctrine of a common fund requiring a passive beneficiary to contribute to the expenses of litigation in creating the fund in proportion to the benefit derived. The same reasoning must apply in the present proceeding. Denial of apportionment of attorney's fees as requested under the circumstances would require a stretching, to the breaking point, of the common fund theory as it is now firmly established in California.

We analogize this situation to the one resulting in the doctrine pronounced by the Supreme Court of California in *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]. The court there clearly established that when the litigant is entitled to compensation from a negligent employer, that employer may not recover reimbursement from such compensation payment made to his injured employee by asserting a lien against any judgment recovered in an action brought against a third party. To have denied the establishment of that doctrine, a negligent employer would have been permitted, at the expense of his nonnegligent employee, to reimbursement resulting in unjust enrichment.

So here, unless ordered to participate pro rata in plaintiffs' attorney's fees and cost, defendant, as a passive beneficiary, would be unjustly enriched by reimbursement of medical payments as required by the provisions of the insurance contract.

The judgment is affirmed; each side shall bear its own costs.

**FRIEDMAN, J.**—I concur, but with reluctance. My unwilling agreement results from the precedential force of *Block* v. *Cal. Physicians Service* (1966) 244 Cal.App.2d 266 [53 Cal.Rptr. 51], and *West* v. *State Farm Mut. Auto. Ins. Co.* (1973) 30 Cal.App.3d 562 [106 Cal.Rptr. 486]. In composite, these two decisions represent a creeping erosion of the anti-subrogation principle established at common law and preserved by section 573, Probate Code. The successive amendments of State Farm's "reimbursement" clauses illustrate how eagerly and quickly the disingenuous draftsmen of insurance policies move into the gaps created by decisional erosion.

Although I respectfully suggest that the *West* decision was unrealistic, it is possible that State Farm's draftsmanship goes beyond the limits

staked out in that case. The *West* decision expressly abstained from considering the effect of a clause requiring the insured to bring suit against the third party. (30 Cal.App.3d at p. 565.) The present policy contains such a clause. The cumulative effect of the policy provisions is to create the economic reality of subrogation to the personal injury claim without its language.

The defendant insurance company argues that these clauses prevent double recovery. A liability insurance policy is a piece of merchandise. (See 7 Williston on Contracts, § 900, p. 34.) In a free society an individual may go out and buy and keep all the merchandise he desires. The question is not whether the policyholder is recovering from two sources but whether the insurance company is supplying the merchandise for which it exacted a premium. The double recovery argument is singularly unmoving.

The reimbursement provisions of the State Farm policy are tucked away in a "trust agreement" among the policy's general conditions. These obscure subtractions seriously curtail the policy's ostensible offer of medical payments coverage. Two additional principles of contract law—one, a rule of consent, the other a rule of interpretation—are aroused by these policy clauses. The first is the rule of constructive fraud, which may nullify the policyholder's consent to fine-print "sleepers." (1 Witkin, Summary of Cal. Law, Contracts, §§ 322-323.)

The other is the concept of contracts of adhesion, a doctrine particularly applicable when a public service firm of superior knowledge and insight sells standardized contracts to the general public. In those cases "the California courts have long been disinclined to effectuate clauses of limitation of liability which were unclear, unexpected, inconspicuous or unconscionable." (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 879 [27 Cal.Rptr. 172, 377 P.2d 284].) " . . . [T]he courts in the field of insurance contracts have tended to require that the insurer render the basic insurance protection which it has held out to the insured." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 280 [54 Cal.Rptr. 104, 419 P.2d 168].)

These two doctrines express closely related public policies. At some point they may combine to sire a new expression of public policy, one which denies enforcement of these artful withdrawals of coverage unless they are specifically brought to the customer's attention before he buys the policy. The moral considerations underlying the adhesion concept

transcend its limited role as a mere rule of contract interpretation. Public policy should assure the buyer an opportunity of shopping in the open market before he is sold a piece of merchandise falling short of his reasonable expectations.

Decisional law gives signs of progress to the point I have described. (See *C. & J. Fert., Inc.* v. *Allied Mut. Ins. Co.* (Iowa 1975) 227 N.W.2d 169; *Corgatelli* v. *Globe Life & Accident Insurance Co.* (1975) 96 Idaho 616 [533 P.2d 737]; see Keeton, *Insurance Law Rights at Variance with Policy Provisions* (1970) 83 Harv.L.Rev. 961.) Counsel have not briefed this line of inquiry. The pressures of a heavy workload- in this court discourage unsupported research and analysis.

I agree that the attorney fees should be borne proportionately.

**PUGLIA, P. J.**—I concur in the judgment and join in the views expressed in the concurring opinion of Justice Friedman.

The petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied May 26, 1976. Wright, C. J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.