*Supp. 35 Opinion
REESE, P. J.
I. Statement of Facts and Proceedings Below
The following statement of facts and summary of proceedings in the trial court are excerpted from the engrossed settled statement filed herein:
“Testimony at Trial: Only two (2) witnesses provided testimony at time of trial, both of whom were called by plaintiff, Hartford Accident and Indemnity Company (‘Hartford’)—Helen Gropman, the defendant in this action, and John Rath, the assistant regional claims writing manager for plaintiff, Hartford.
“Helen Gropman: Helen Gropman testified that she and her husband purchased Hartford policies of automobile insurance from the late 1950’s or early 1960’s, until 1975. The insurance policies were always purchased from their insurance agents—James Feinhor from 1962 through 1975, and Irv Blech prior to 1962. The insurance policies always contained a Medical Reimbursement clause, which provided that in the event that Mrs. Gropman or her husband were involved in an automobile-related accident, Hartford would pay for their medical bills.
“In May 1974, and again in July 1975, Mrs. Gropman was injured in automobile accidents, neither of which was her fault. After each accident, she notified Hartford of her injuries and requested payment of her medical bills. For each of the accidents, Hartford paid $3,000 worth of her medical bills.
“At the time she reported the accidents and injuries to Hartford, she was informed for the first time that her Hartford insurance policy contained a Reimbursement clause, which required that she reimburse Hartford for the medical bills they had paid on her behalf, in the event that she received a settlement or judgment from the person or persons responsible for her injuries. She was first informed of this requirement after the 1974 accident but before the 1975 accident.
“Mrs. Gropman testified that she had never received the purported amendment to her policy which contained the Reimbursement clause. She further testified that neither Hartford nor her insurance agents ever informed or explained to her the meaning of the Reimbursement clause, and that the first time she was ever notified of the existence of the Reimbursement clause was after she had submitted her claim for payment of her medical bills *Supp. 36 incurred as a result of the aforementioned 1974 accident. She did not cancel her Hartford policy before the July 1975 accident, because prior to that time Hartford had not yet paid for any portion of her incurred medical bills, and she feared that cancelling her policy might jeopardize her ability to obtain such benefits—though no-one at Hartford suggested as much.
“With respect to both accidents (May 1974 and July 1975), Mrs. Gropman filed suit against the tortfeasors, and in each case the gross recovery was in excess of $3,000.00.
“Although Hartford has demanded reimbursement of the sums paid by Hartford for her medical bills ($3,000 for each accident), Mrs. Gropman has not reimbursed Hartford for those sums.
“(In a pre-trial ruling, the trial Judge, the Honorable Malcolm Mackey, ruled that Mrs. Gropman was precluded from offering any testimony concerning the severity of her injuries, the extent of her medical bills or the amount of pain and suffering sustained as a result of her injuries.)
“John Rath: John Rath testified that he is currently the Assistant Regional Claims Writing Manager for Hartford, and has been employed by Hartford since 1967.
“In approximately October 1971, Hartford prepared an amendment to its Economy Automobile Policy (the type of insurance policy that he testified was owned by Mrs. Gropman at all times pertinent to this lawsuit) and that subsequent to 1971 copies of the amendments were mailed out. He did not know for sure whether these amendments were mailed to the Hartford insurance agents, or directly to the policyholders. The 1971 amendment to the Economy Automobile Policy contained the Reimbursement clause which is the subject of this lawsuit.
“He didn’t know whether Hartford had an Economy Automobile Policy prior to 1963, nor did he know when Mrs. Gropman first purchased her Hartford policy of insurance.
“(Mr. Rath’s testimony was based almost exclusively on repeated references to the ‘claims file’ which he brought with him to the witness stand.
“In ordering Judgment in favor of plaintiff Hartford, the Court specifically found that at the time defendant Mrs. Gropman renewed her policy which was in effect at the time of the 1975 accident, she was aware of the reimbursement required in the medical payment portion of that policy.
*Supp. 37 6 6
“Hartford did not subpoena defendant Helen Gropman’s appearance at trial. Rather, on May 3, 1983, Hartford mailed an ‘Amended Notice in Lieu of Service of Subpoena,’ requesting Mrs. Gropman’s appearance at the May 16, 1983 trial. Counsel for Mrs. Gropman asserted that the Notice was untimely and Mrs. Gropman would not appear. However, in a pre-trial chambers conference, Judge Mackey indicated that if Mrs. Gropman did not appear for trial on that date (May 16, 1983), he would grant Hartford a continuance of the trial to allow proper notice or subpoena. Based on Judge Mackey’s position, Mrs. Gropman appeared at the May 16, 1983 trial.
“Hartford failed to comply with Section 1825.1 of the Code of Civil Procedure, which requires that a party ‘shall file with the court a statement of witnesses and physical evidence within 45 days after the date the case is at issue.’ Section 1825.3 of the same Code provides that a party is precluded from calling witnesses or introducing physical evidence not contained in the required ‘statement.’ Hartford did not file with the Court such a statement, at any time.
“In a pre-trial conference with the trial Judge, counsel for Hartford admitted he failed to file the required statement, explaining that it was his impression that California Rules of Court, Rule 1721 was the only statute governing this subject. The Court, on its own initiative determined that there was sufficient excuse for relief under Section 473 of the Code of Civil Procedure, based on Hartford’s counsel’s aforementioned statement, and excused Hartford’s failure to file the Section 1825.1 statement.
“As a result of Court’s ruling, Hartford was able to introduce the subject policy of insurance into evidence, and was also able to call Mrs. Gropman to testify on its behalf.”
II. Issues
The issues raised by defendant are:
1. Whether the reimbursement clause in question is so vague, ambiguous, overbroad and illusory, as to be void as a matter of public policy.
2. If the basic validity of the reimbursement clause is upheld, whether it must be reasonably interpreted so as to only allow Hartford to seek reim *Supp. 38 bursement from that portion of defendant’s tort recovery that is related to recovery for her medical bills, as opposed to other special damages and general damages for pain and suffering.
3. If the reimbursement clause is given full force and effect, whether the $3,000 judgment must be reduced proportionately to reflect the attorney fees defendant paid to her attorney in the underlying action for personal injuries.
4. Whether the trial court erred in (1) allowing Hartford to call defendant as a witness, and further allowing Hartford to introduce the insurance policy as an exhibit, despite Hartford’s failure to comply with sections 1825.1 and 1987 of the Code of Civil Procedure, and (2) in precluding defendant from testifying as to what portions, if any, of her underlying tort recovery were related to medical expenses.
III. Discussion
A. Reimbursement Clause of Insurance Policy
1. Defendant submits the following contentions regarding the reimbursement clause contained in the subject insurance policy: (1) That the clause is void because of vagueness, ambiguity, and overbreadth; (2) that, assuming validity, the clause should be interpreted to permit plaintiff insurance company to recover reimbursement solely from that portion of defendant’s recovery specifically allocated for her medical bills; and (3) that,should the reimbursement clause be given full force and effect, the judgment in favor of plaintiff must be reduced proportionately to reflect the attorney fees defendant paid to her attorney in the underlying action for personal injuries. We disagree with defendant’s position in (1) and (2) above and agree with her position in (3) upon the following reasoning.
The relevant portion of the policy involved herein is as follows: “In the event of payment to any person under the Medical Expense Coverage: [1] (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction of the matter.”
In Lee v. State Farm Mut. Auto. Ins. Co. (1976) 57 Cal.App.3d 458 [129 Cal.Rptr. 271], at issue was the language of a reimbursement clause in an *Supp. 39 insurance policy that is virtually identical with the language in the clause contained in the policy before us. At pages 465-466, the court states:
“As argued by plaintiffs, it is well established in California that an assignment of a cause of action for personal injuries is void and in the absence of statutory authority, a cause of action for personal injury is not subject to subrogation. {Block v. Cal. Physicians’ Service (1966) 244 Cal.App.2d 266, 270 [53 Cal.Rptr. 51].) However, the court in Block stated, at page 273: ‘By becoming a member of the plan under a Group Health Service agreement plaintiff has voluntarily associated himself with the public policy of this state. While he has a right to seek to be made whole, it is unfair for him to seek enrichment by double recovery which would result from retention of all proceeds of the settlement of his suit . . . and of all medical and hospital benefits paid to him by defendant Service under its [insurance] agreement—for the same injuries—all eventually at the cost of the participating members of the plan.’ It has been clearly established in California that insurance contract provisions, although classified as adhesion contracts, requiring reimbursement of medical payments under the label of subrogation but providing only access to the proceeds of settlement or judgment resulting from the exercise of rights of recovery by the injured person, are valid and enforceable. (Block v. Cal. Physicians’ Service, supra; West v. State Farm Mut. Auto. Ins. Co. (1973) 30 Cal.App.3d 562 [106 Cal.Rptr. 486].)” (Italics added.)
In accordance with Lee we find the reimbursement clause contained in the policy before us to be valid and enforceable. We further determine that plaintiff has an enforceable right to be reimbursed from the totality of the proceeds received by defendant, rather than restricted to the medical payments proceeds. The Lee court states at page 466: “Substance rather than form is the determining factor. The right given to the insurer according to the terms of the policy is not to the chose in action but is to the proceeds of any settlement or judgment resulting from the exercise of the injured party’s rights of recovery against a third party tort feasor.” (Italics added.)
We find defendant’s position that any recovery herein by plaintiff must be reduced proportionately to reflect the attorney fees defendant paid to her attorney in the underlying action for personal injuries to be a sound one. “[W]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney’s fees out of the fund.” {D’Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 25 [112 Cal.Rptr. 786, 520 P.2d 10].) In the case at bench, defendant, in the underlying action, initiated and prosecuted proceedings which resulted in a “common fund” *Supp. 40 out of which plaintiff is entitled to reimbursement for medical expenses advanced by plaintiff under the terms of the policy. Defendant is entitled to be credited for a pro rata share of attorney fees incurred by defendant in securing the fund out of which the plaintiff is to be reimbursed for medical expenses paid by plaintiff to defendant.
“The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful.” (Estate of Stauffer (1959) 53 Cal.2d 124, 132 [346 P.2d 748].)
“The application of this equitable doctrine has been recently further extended by the Supreme Court in Quinn v. State of California (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761]. In that case, plaintiff, an injured employee, recovered judgment against a third party tortfeasor against which judgment his employer’s insurer claimed a lien for the amount of workers’ compensation benefits paid. (Lab. Code, § 3856.) The insurer did not otherwise participate in the proceeding. Plaintiff there recovered a substantial judgment and following trial, the liability insurance carrier reduced the amount of the recovery by deducting from the judgment the amount of workers’ compensation benefits received by the plaintiff. Plaintiff sought an order apportioning his attorney’s fees between himself and the insurer, contending that his attorney had exclusively performed the work leading to the recovery. The Supreme Court, in invoking the equitable common fund theory, stated, ‘Although American courts, in contrast to those of England, have never awarded counsels’ fees as a routine component of costs, at least one exception to this rule has become as well established as the rule itself: that one who expends attorneys’ fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs. Articulating the policies underlying this rule and its exception, a prominent scholar of the problems of unjust enrichment has noted that the denial of an attorney’s fee to a prevailing litigant “is a partial denial of justice.” (Dawson, Lawyers and Involuntary Clients: Attorney Fees from Funds (1974) 87 Harv.L.Rev. 1597.)’” {Lee v. State Farm Mut. Auto. Ins. Co., supra, 57 Cal.App.3d 458, 468.)
*Supp. 41 We conclude the trial court erred in not apportioning the attorney fees expended by defendant in the underlying action against the $3,000 judgment awarded plaintiff herein.
B. Discretionary Rulings on Evidentiary Issues by Trial Court.
1. Defendant next contends that plaintiff was improperly allowed to call witnesses and introduce physical evidence not contained in a Code of Civil Procedure section 1825.1 statement.
The settled statement reflects plaintiff did not comply with Code of Civil Procedure section 1825.1, which requires that a party “shall file with the court a statement of witnesses and physical evidence within 45 days after the date the case is at issue.” Plaintiff did not file such a statement at any time. The trial court determined that plaintiff’s counsel’s excuse was sufficient for relief under section 473 of the Code of Civil Procedure. He excused plaintiff’s failure to comply with section 1825.1, Code of Civil Procedure and permitted plaintiff to introduce the subject policy into evidence and to call defendant to testify as a witness. Defendant contends the trial court abused its discretion in permitting plaintiff relief under section 473, Code of Civil Procedure. We find no merit in this position.
It is well established that “[A] motion for relief under section 473 is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse thereof the exercise of that discretion will not be disturbed on appeal.” (Coyne v. Krempels (1950) 36 Cal.2d 257, 263 [223 P.2d 244].)
2. Defendant argues the trial court erred in allowing plaintiff to call defendant as a witness at the trial. The amended notice in lieu of service of subpoena was not mailed timely. In a pretrial chambers conference, counsel for defendant asserted that his client (defendant) would not appear as the notice was untimely. The trial judge indicated that should defendant not appear, he would grant plaintiff a continuance of the trial to allow plaintiff to properly notice or subpoena. The defendant appeared voluntarily. We find no abuse of discretion. “The factors which influence the granting or denying of a continuance in any particular case are so varied that the trial judge must necessarily exercise a broad discretion. On an appeal from the judgment (the order itself being nonappealable) it is practically impossible to show reversible error in the granting of a continuance.” (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 7, p. 2865.)
3. Defendant finally argues the trial court erred in precluding defendant from testifying as to what portions, if any, of her underlying recov *Supp. 42 ery were related to medical expenses. We find no error. As indicated herein, supra, plaintiff is entitled to reimbursement from the entire amount recovered by defendant in the underlying action, and is not limited to that portion thereof allocated to medical expenses.
The judgment is affirmed in all respects except as to the amount thereof. The matter is remanded to the trial court for modification of the judgment to reflect a pro rata amount of the attorney fees incurred by defendant in pursuing recovery in the underlying action. Each party to bear its own costs on appeal.
Bernstein, J., and Cooperman, J., concurred.