64 F.3d 1389
 19 Employee Benefits Cas. 1958, 95 Cal. Daily
Op. Serv. 7111,
95 Daily Journal D.A.R. 12,137
Susan M. BARNES, Plaintiff-Appellant,
v.
INDEPENDENT AUTOMOBILE DEALERS ASSOCIATION OF CALIFORNIA
HEALTH AND WELFARE BENEFIT PLAN, and Does 1
through 25, inclusive, Defendants-Appellees.
 No. 93-16049.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1994.
Decided Sept. 8, 1995.
 
 Stephen D. Schear, Oakland, CA, for plaintiff-appellant.
 William H. Leifer, Wild, Carter, Tipton & Oliver, Fresno, CA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: BOOCHEVER, NORRIS, and HALL, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Susan Barnes appeals from the district court's grant of summary judgment in favor of Independent Automobile Dealers Association of California Health & Welfare Benefit Plan ("the Plan"). The district court found that the subrogation clause in the Plan's benefit agreement prevented Barnes from recovering for medical expenses. We conclude that Barnes is entitled to recover for medical expenses and remand for entry of summary judgment in her favor.
 
 FACTS
 
 2
 Susan Barnes was an employee beneficiary of the Plan, a self-funded employee medical benefit program. The Plan entitled Barnes to payment of medical bills incurred as the result of an accident.
 
 
 3
 In October 1990, Barnes' car was hit from behind by a car driven by Catherine Clark. Clark disputed liability. Barnes underwent back surgery two months later, incurring medical bills totalling $23,075.40. As a result of the accident, Barnes lost time from work and incurred substantial pain and suffering. Barnes' automobile insurance policy provided for $5000 in medical payments.
 
 
 4
 Barnes sued Clark in California state court in January 1991, including a damage claim for medical bills. In February, Barnes submitted an accident claim form to the Plan. When no payment was received, Barnes' attorney wrote a demand letter to the Plan and to Barnes' automobile insurance company in April 1991. The Plan replied that because Barnes had filed a suit against a third party, the Plan would withhold payment on claims resulting from the accident, citing its subrogation clause in the benefit agreement. The Plan requested that Barnes keep it informed of the outcome of the suit. The Plan did not intervene or participate in any way in the legal action, nor did it pay Barnes any benefits. Barnes' automobile insurer subsequently paid her the $5000 policy limit.
 
 
 5
 Barnes settled with Clark in November 1991 for $25,000, the liability limit in Clark's auto insurance policy. Clark then filed a motion for good faith settlement, reciting the parties' agreement that the $25,000 represented general damages only. The state court granted the motion. Barnes also signed a general release, releasing Clark from all claims by any person related to Barnes' injuries.
 
 
 6
 In August 1992, Barnes filed a state court action against the Plan to collect payment for her outstanding medical bills. The Plan removed the lawsuit to federal district court, pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1132(e)(1). Barnes asked for $18,075.40 plus interest, the amount of her medical bills minus the $5000 already paid by her automobile insurer. Both parties moved for summary judgment. Barnes submitted an affidavit from her attorney stating that the settlement value of her claim against Clark, including pain and suffering, was at least $65,000. The Plan argued that the subrogation clause entitled it to decline all payment to Barnes. The district court granted the Plan's motion. Barnes now appeals.
 
 DISCUSSION
 
 7
 We review the district court's grant of summary judgment de novo. Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 942 (9th Cir.1995). Viewing the evidence in the light most favorable to Barnes, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 8
 When a participant files an action challenging an ERISA plan's denial of benefits, the district court reviews the plan's interpretation of the agreement de novo, unless the benefit plan gives the administrator discretion to determine eligibility for benefits or to construe the terms of the plan. Id.; Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). Because the Plan document in this case gives no such discretionary authority to any administrator, de novo review is appropriate in this case. See Mongeluzo, 46 F.3d at 942. We keep in mind that "ERISA is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans." Batchelor v. Oak Hill Medical Group, 870 F.2d 1446, 1449 (9th Cir.1989).
 
 
 9
 Subrogation is the insurer's right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer. 16 Couch on Insurance 2d Sec. 61:1 at 75 (rev. ed. 1983). The right to subrogation, even when created by agreement between the insured and the insurer, "is designed to compel discharge of the obligation by the one who in equity should bear the loss." Id. If the insurer paid the insured the full amount of his claim and the insured then recovers from the third party, the insured must reimburse the insurer any amount recovered in excess of his own claim. Id. Sec. 61:29 at 109-11. We must decide whether the Plan's right of subrogation, as provided for in the benefit agreement, entitles the Plan to decline all payment to Barnes because she settled with Clark for $25,000.
 
 
 10
 Because the Plan is governed by ERISA, we do not apply state subrogation law to interpret the provisions of the Plan document. ERISA preempts state regulatory laws and common-law rules related to self-funded employee benefit plans. FMC Corp. v. Holliday, 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990) (state laws regulating subrogation clauses are preempted); Scott v. Gulf Oil Corp., 754 F.2d 1499, 1501-02 (9th Cir.1985) (state common law is also preempted). "Congress intended for the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits." Scott, 754 F.2d at 1502.
 
 
 11
 This appeal presents two issues: first, whether the subrogation clause in the Plan's benefit agreement is ambiguous, and second, whether Barnes prejudiced the Plan's subrogation rights, if any.
 
 I. Ambiguity
 
 12
 On appeal, Barnes argues that the subrogation clause in the Plan agreement is ambiguous, and as a result, must be construed against the Plan. Once the clause is so construed, Barnes contends that the Plan must pay her for her remaining medical expenses.
 
 
 13
 The Plan's benefit agreement provided as follows:
 
 
 14
 SUBROGATION--This plan may withhold payment of benefits when a party other than the employee or dependent may be liable for expenses until liability is legally determined. However, if this plan makes payment which the employee, dependent or any other party is or may be entitled to recover against any person or organization responsible for an accident or illness, this Plan is subrogated to all rights of recovery to the extent of its payment. The employee, dependent, or other person or organization receiving payment from this Plan shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights to the Plan, and shall do nothing either before or after payment by the Plan to prejudice such rights.
 
 
 15
 (emphasis added).
 
 
 16
 The parties agree that the first sentence of this clause unambiguously provides that the Plan may wait to make payment until the liability of a third person has been determined. They disagree, however, on the interpretation of the second sentence. Barnes argues that the phrase "if this plan makes payment ... this Plan is subrogated to all rights of recovery to the extent of its payment" means that the Plan's right to subrogation arises only after it has made payment to the employee. The Plan counters that it is entitled to subrogation even though it never made any payment to Barnes.
 
 
 17
 We think the interpretation that is most consistent with the Plan document's language is that the Plan's right to subrogation arises only after the Plan makes payment to the insured. The Plan document provides that the Plan is subrogated if it makes payment, but it is silent regarding what the Plan's rights are if it refuses to pay. Under the doctrine of expressio unius est exclusio alterius, we must assume that by expressly providing for subrogation in cases in which the Plan makes payment, the Plan document excludes subrogation when no payment is made. See Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1312-1313 (9th Cir.1992) (doctrine means that mention of one thing implies exclusion of the other); Hardware Mut. Ins. Co. v. Dunwoody, 194 F.2d 666, 668 (9th Cir.1952) (applying the doctrine to a subrogation clause in an insurance contract); see also Shell v. Amalgamated Cotton Garment, 43 F.3d 364, 366 (8th Cir.1994) (ERISA plan administrators abused their discretion in interpreting subrogation clause providing for reimbursement of benefits that plan "has paid" to mean reimbursement for all benefits paid, regardless of whether before or after settlement with third party). This interpretation of the Plan document's language is consistent with general principles of insurance law. See 16 Couch, supra, Sec. 61:49 at 133 ("No right of subrogation arises until the claim has been paid.").
 
 
 18
 Even if we consider the Plan language to be ambiguous because it does not specifically provide that there is no right to subrogation in the absence of payment, we would reach the same result. We must construe ambiguities in an ERISA plan against the drafter and in favor of the insured. Mongeluzo, 46 F.3d at 942. Construing the clause in Barnes' favor, we find that, under the terms of the Plan document, the Plan had no right to subrogation because it never made payment to Barnes.[1]
 
 II. Prejudice to the Rights of the Plan
 
 19
 The Plan argues that Barnes, in releasing Clark, violated the third sentence of the subrogation clause in the Plan document that states, "[t]he employee ... receiving payment from this Plan ... shall do nothing either before or after payment by the Plan to prejudice such rights [of recovery]" (emphasis added). The Plan maintains that Barnes prejudiced its rights when Barnes settled with Clark and released Clark from further liability. The Plan contends that therefore Barnes may not recover her medical expenses from the Plan.
 
 
 20
 We find that Barnes' release of Clark did not prejudice an existing right to subrogation. We have held that the Plan document establishes no right to subrogation until the Plan makes payment to its insured. Because the Plan never made payment, no existing right to subrogation was prejudiced when Barnes settled with Clark.
 
 
 21
 The language of the prejudice clause, however, may be construed to protect the Plan from injury to any right to subrogation that may arise in the future. The prejudice clause prohibits the insured from doing anything before payment that would prejudice the plan's rights. Construed with the rest of the subrogation clause, that means that the insured, by settling with and releasing a tortfeasor before the Plan makes payment, cannot cut off any rights the Plan might subsequently have.
 
 
 22
 The Plan document, however, does not spell out what rights the Plan has when the Plan has not made payment. Because the Plan is silent on this point, and because ERISA does not include a specific provision to resolve such questions, this court "ha[s] the authority, indeed the obligation, to adopt a federal rule--that is, a rule that best comports with the interests served by ERISA's regulatory scheme." PM Group Life Ins. Co. v. Western Growers Assurance Trust, 953 F.2d 543, 546 (9th Cir.1992). Although this court is
 
 
 23
 free to adopt any rule, the common law decision-making process is inherently incremental in nature; the very genius of the common law is that it proceeds empirically and gradually, testing the ground at every step. Here, that approach calls for devising a rule that does not stray too far from the existing regime.
 
 
 24
 Id. at 547 (citation and quotations omitted). We therefore must determine what rights the Plan is entitled to under federal common law when no payment to the insured has been made.
 
 A. The "Make-Whole" Rule
 
 25
 It is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole. See Fields v. Farmers Ins. Co., 18 F.3d 831, 835 (10th Cir.1994) (diversity case listing jurisdictions following the rule); Guy v. Southeastern Iron Workers' Welfare Fund, 877 F.2d 37, 39 (11th Cir.1989) (ERISA case noting that subrogation right not mature until insured is reimbursed for loss). The make-whole principle
 
 
 26
 is a rule of interpretation. No one doubts that the beneficiary of an insurance policy or (as here) an employee welfare or benefits plan can if he wants sign away his make-whole right. The right exists only when the parties are silent. It is a gap filler.
 
 
 27
 Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1297 (7th Cir.) (citations omitted), cert. denied, --- U.S. ----, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993).
 
 
 28
 That rule is supported by substantial authority in existing insurance law, and it is consistent with ERISA's purpose of protecting participants in employee benefit plans. See Batchelor, 870 F.2d at 1449; Guy, 877 F.2d at 39-40 (allowing subrogation before plaintiff made whole would not be "compatible with the remedial principles of ERISA"). Because the make-whole rule does not permit an insured to recover from the tort-feasor and from her insurance company if the recovery would exceed the damages, it also is consistent with ERISA's related purpose of maintaining the interest of other employees in their benefit plans. See Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986) (a central goal of ERISA is protection of employees' rights in benefit plans against unwarranted disbursements); Germany v. Operating Eng'rs Trust Fund, 789 F.Supp. 1165, 1171 (D.D.C.1992) (applying make-whole rule to subrogation under ERISA plan as "consistent with the prevention of unjust enrichment"). We adopt as federal common law this generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation.
 
 
 29
 In this case, the record on summary judgment shows that Barnes was not made whole by her $25,000 settlement for general damages with Clark and her recovery of $5000 for medical expenses from her automobile insurer. With her motion for summary judgment, Barnes submitted an affidavit from her attorney estimating the value of her claim to be at least $65,000. The district court refused to consider this as evidence, writing that it was "not ... adequate proof" showing a genuine issue for trial, because it was mere theorizing without specific factual support. We respectfully disagree. The affidavit states that the $65,000 figure is based on the cost of the operation, pain and suffering, and special damages. The motion for good faith settlement, which was attached as an exhibit to the affidavit, stated that Barnes had $8,906.92 in lost wages.
 
 
 30
 Barnes underwent a surgical discectomy and fusion. The Plan did not dispute the $65,000 figure or present its own estimate. There is no factual dispute that Barnes will not receive more than enough to make her whole if she recovers the $18,075.40 in medical expenses.[2]
 
 
 31
 There was thus no genuine issue for trial regarding whether Barnes had been made whole. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (to show genuine dispute for trial, party opposing summary judgment must designate specific facts). The only evidence in the record, unopposed by the Plan, was that she was not made whole. We would not apply the interpretive "make-whole rule" as a "gap-filler" if the subrogation clause in the Plan document specifically allowed the Plan the right of first reimbursement out of any recovery Barnes was able to obtain even if Barnes were not made whole. The clause, however, contains no such language. Cf. Shell v. Amalgamated Cotton Garment, 871 F.Supp. 1173, 1177 (D.Minn.1994) (no need to use make-whole doctrine when plan specifically provides for insurer's first priority), aff'd, 43 F.3d 364 (8th Cir.1994); Sapiano v. Williamsburg Nat'l Ins. Co., 28 Cal.App.4th 533, 33 Cal.Rptr.2d 659, 661 (1994) (while the parties "could, explicitly, provide in their contract that the insurer has a priority regardless whether the insured is first made whole," if the contract does not do so, general subrogation language does not displace the make-whole rule); Samura v. Kaiser Found. Health Plan, Inc., 17 Cal.App.4th 1284, 22 Cal.Rptr.2d 20, 23 (1993) (plan providing subrogation "regardless of whether the total amount of the recovery ... is less than the actual loss suffered" allowed subrogation before insured was made whole), cert. denied, --- U.S. ----, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994).
 
 
 32
 We therefore conclude that the Plan's rights are limited by the common law make-whole rule. Because Barnes was not made whole, we find that she did not prejudice the Plan's rights.[3]
 
 B. "All Rights" of Recovery
 
 33
 The Plan argues that because the subrogation clause states that if the Plan makes payment it is subrogated "to all rights of recovery," the make-whole rule does not apply. It is true that courts have upheld findings that a reference in a subrogation clause to "any" or "all" rights of recovery overrides the rule. See, e.g., Fields, 18 F.3d at 835-36 ("any recovery" sufficient under Oklahoma law to abrogate make-whole rule); Cutting, 993 F.2d at 1299 (in ERISA case, not unreasonable to find that "all claims" language overrode make-whole rule). In those cases, however, the insurance company either already had paid the insured's claim (Fields ), or the court avoided the determination whether the make-whole rule survived by deferring to the interpretation of the plan administrator, when the benefit plan, unlike the one in this case, gave the administrator discretion to interpret its provisions (Cutting ). Cf. Guy, 877 F.2d at 38-39 (applying make-whole rule to find that ERISA plan was arbitrary and capricious in withholding benefits, where subrogation clause referred to "any rights of recovery").
 
 
 34
 The Plan relies upon several California cases allowing subrogation to be paid out of the proceeds from lawsuits against third parties, even when as a result the insured would not be made whole. We note, however, that even these cases would not require a different result. In one, the insurer had already made payment to the insured. Lee v. State Farm Mut. Ins. Co., 57 Cal.App.3d 458, 129 Cal.Rptr. 271, 272 (1976). In two others, the insurer both paid the insured parties for their loss and then cooperated and assisted in the lawsuit against the third parties. Liberty Mut. Ins. Co. v. Altfillisch Constr. Co., 70 Cal.App.3d 789, 139 Cal.Rptr. 91, 93 (1977); Shifrin v. McGuire & Hester Constr. Co., 239 Cal.App.2d 420, 48 Cal.Rptr. 799, 801 (1966). In the fourth case, the insurer participated in the litigation against the third party and shared the expenses of the suit. Travelers Indem. Co. v. Ingebretsen, 38 Cal.App.3d 858, 113 Cal.Rptr. 679, 685 & n. 7 (1974). See 16 Couch, supra, Sec. 61:43 at 125 (insurer who participates in lawsuit against third party and assists with burdens of litigation can recover out of the judgment amount it has paid even when insured has not been made whole).
 
 
 35
 In contrast, "[t]he facts are different here.... [The Plan] sat back without assisting while [Barnes] prosecuted the suit against [Clark], then, after [Barnes] negotiated a proposed settlement, demanded ... the proceeds for itself." Sapiano, 33 Cal.Rptr.2d at 662. Under these circumstances, when the insurance company makes no payment to the injured insured for covered expenses, and places all the cost and risk of seeking recovery from a third party on the injured insured, the make-whole rule remains in place despite the "all rights" language in the contract. See 16 Couch, supra, Sec. 61:47 at 130 (where insurer aware of third-party suit refuses or fails to join as party, assist, or contribute toward expense of suit, insured need only account for surplus remaining after loss and expenses of suit are recovered); Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 108 (2d Cir.1992) (citing authority that insurer who knows of insured's action against third party but refuses to participate or contribute has no right to subrogation when no double recovery will occur).
 
 
 36
 Because the Plan did not make payment nor participate in the action against the third party, and because Barnes has not been made whole, she is entitled to recover her medical expenses.
 
 III. Attorney's fees
 
 37
 Barnes asks for her attorney's fees pursuant to 29 U.S.C. Sec. 1132(g)(1), which permits an award of "a reasonable attorney's fee and costs of action to either party" in an action "by a participant, beneficiary or fiduciary." In deciding whether to exercise our discretion to award fees, we consider
 
 
 38
 1) the degree of the opposing party's culpability or bad faith; 2) the ability of the opposing party to satisfy an award of fees; 3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; 4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and 5) the relative legal merits of the parties' positions.
 
 
 39
 Kim v. Fujikawa, 871 F.2d 1427, 1435 (9th Cir.1989); Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980). A plan participant who prevails in an action to enforce rights under the plan is ordinarily entitled to a reasonable attorney's fee if the participant "succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit" and if no special circumstances make an award unjust. Losada v. Golden Gate Disposal Co., 950 F.2d 1395, 1401 (9th Cir.1991) (citations and quotations omitted).
 
 
 40
 Several of the above factors weigh in Barnes' favor. The Plan does not dispute that it can satisfy a fee award; Barnes' action sought to resolve an important legal question regarding the interpretation of subrogation clauses in ERISA plans; and Barnes' position has the greater merit. We therefore exercise our discretion to award Barnes her attorney's fees on appeal.
 
 
 41
 Barnes also requested fees in the district court action. The district court did not address the fee request in awarding summary judgment to the Plan. On remand, the district court should consider whether to exercise its discretion to award fees and state the reasons for its decision. See Hummell, 634 F.2d at 452-53 (where district court denies fees without discussion, court of appeals cannot review decision for abuse of discretion).
 
 CONCLUSION
 
 42
 We reverse the district court's grant of summary judgment for the Plan, and remand to the district court for the entry of summary judgment for Barnes, and for the determination of a reasonable attorney's fee on appeal. We remand the matter of attorney's fees for the district court action to allow the district court to consider the relevant factors and to provide reasons for its decision.
 
 
 43
 REVERSED AND REMANDED.
 
 
 
 [1]
 The district court relied on Mann v. Glens Falls Ins. Co., 541 F.2d 819 (9th Cir.1976). Mann, a diversity case tried under Nevada law, involved a dispute over the terms of payment of fire insurance benefits to a mortgagee. The insured argued, among other contentions, that the insurer was not entitled to subrogation because it did not make payment, but this court refused to decide the dispute on those grounds. Id. at 822. Mann does not address the issue of order of performance
 
 
 [2]
 If necessary, we could take judicial notice that a condition requiring such major surgery, and the surgery itself, involve pain and suffering and may well cause permanent partial disability. See Hines ex rel. Sevier v. Secretary of the Dep't of Health & Human Servs., 940 F.2d 1518, 1527 (Fed.Cir.1991) ("Well-known medical facts are the types of matters of which judicial notice may be taken.")
 
 
 [3]
 We note that the evidence on summary judgment was that Clark had few, if any, assets beyond her $25,000 insurance policy, indicating that Barnes' release of Clark did not prejudice the Plan by shielding assets from it if the Plan had been free to assert its right of subrogation against Clark. The Plan's opposition to Barnes' motion for summary judgment states without explanation that the Plan "disputes plaintiff's contention that the tort-feasor (Susan Barnes) [sic] is or was judgement [sic] proof." It does not state the basis for its contention that the "tort-feasor" (presumably Clark, not Barnes) had other assets, nor does it submit any evidence to that effect. That is not sufficient to establish a genuine issue of fact regarding Clark's financial state. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (party opposing summary judgment must designate specific facts to show genuine issue for trial)