Doreen C. MANN, Appellee,

v.

GLENS FALLS INSURANCE COMPANY et al., Appellants.

No. 74–2603.

United States Court of Appeals, Ninth Circuit.

Aug. 18, 1976.

Jerome F. Downs (argued), of Thornton, Taylor & Downs, San Francisco, Cal., for appellants.

David R. Belding (argued), of Breen, Young, Whitehead & Hoy, Reno, Nev., for appellee.

Before TRASK and GOODWIN, Circuit Judges, and BOHANON,* District Judge.

GOODWIN, Circuit Judge:

Glens Falls Insurance Company appeals from a judgment requiring it to pay a disputed insurance claim, plus interest, and general damages flowing from the initial refusal to pay. This diversity case was tried under Nevada law.

In 1969, the company insured Mrs. Mann's house for $15,000. The policy was a standard-form fire policy with a "mortgage clause" making the insurance proceeds partially payable to a local bank which then held a mortgage on the property. In 1971, Mrs. Mann paid off the mortgage and the bank lost its insurable interest in the property.

Mrs. Mann subsequently sold the house for $25,000. The buyers, Mr. and Mrs. Bates, paid $2,000 cash and agreed to pay $23,000 secured by a purchase-money mortgage [1] payable to Mrs. Mann.

The Bateses agreed orally to insure the house against fire loss and to name Mrs. Mann as loss-payable mortgagee. However, before the Bateses purchased any insurance, the house burned to the ground. At the time of the loss, Mrs. Mann's 1969 policy had not expired.

---

* The Honorable Luther L. Bohanon, United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

1. For the ease of the reader and because the parties have argued in terms of "mortgage", we will use the term "mortgage" and its derivations throughout the opinion. The document actually executed was a deed of trust, but the differences between the two instruments do not affect the outcome of the case.

The company's claims adjuster estimated that the house was a total loss and that the actual damage exceeded the policy limits. The adjuster recommended payment of $15,000, the policy limit.

Because of the change in the character of Mrs. Mann's insurable interest (from owner to mortgagee), the company asked her to sign a "partial, subordinated assignment" of the mortgage and the mortgage debt. This partial, subordinated assignment would have allowed Mrs. Mann to receive $15,000 in cash, plus pro rata mortgage payments to be made by the Bateses (if any) or the first $8,000 realized from the foreclosure of the mortgage, if it were foreclosed. If the foreclosure sale netted proceeds in excess of $8,000 the partial, subordinated assignment would then entitle the company to the next $15,000.

Mrs. Mann refused the offer. She desired to use all $15,000 of the insurance proceeds to reestablish the status quo ante the fire—to rebuild the house, place the Bateses back in possession, and then receive her monthly mortgage payments from the Bateses.[2] Mrs. Mann did not want to foreclose or permit the insurer to foreclose the Bateses. On the advice of counsel, she refused to sign. The company refused to pay on her terms, and this litigation is the result.

## I

Fire insurance on mortgaged property ordinarily is underwritten with the owner as "insured". The mortgagee, in such cases, is named as the person to whom a part of the proceeds will be paid in the event of loss. In the standard mortgage situation, the mortgagor is the named insured; the mortgagee may be an additional insured with rights in the policy, or it may be a third-party beneficiary. However, should the mortgagor fail to insure, the mortgagee can buy insurance to protect its insurable interest in the property. Despite some criticism,[3] the widely accepted rule is that the mortgagor is not entitled to insurance protection under a mortgagee-only type insurance policy.

The parties in this case never decided what sort of policy was involved. Mrs. Mann bought the policy when she owned the house. During the policy term, she sold the house and took back a security interest. Her rights to the proceeds depend in part upon whether her policy is treated as a standard owner-mortgagee policy or a mortgagee-only policy.[4]

The language of the contract states that the company insures Mrs. Mann against fire loss up to the policy limit, but not "in any event for more than the interest of the insured". Her insurable interest at the time of the fire[5] was that of a mortgagee. The Bateses were in possession. They had received no assignment of the policy. The policy does not name the Bateses as insureds nor create any rights in them. Mrs. Mann, the former owner, now mortgagee, is the only insured. We conclude that the policy, by operation of law, had become a mortgagee-only type policy.[6]

---

**2.** Mrs. Mann's attorney attempted to create a legally binding arrangement which would ensure that the insurance proceeds actually went back into the property. He did this to counter the company's concern that Mrs. Mann might get a "double recovery"—from the insurance company and from the Bateses payments.

**3.** See generally, King, Subrogation Under Contracts Insuring Property, 30 Tex.L.Rev. 62, 72–76 (1951); e. g., In re Future Mfg. Coop., 165 F.Supp. 111 (N.D.Cal.1958); Note, 72 Harv.L. Rev. 1380 (1959).

**4.** These definitions ordinarily are spelled out in writing. But here, the owner changed her insurable interest without the knowledge of the company; and it becomes necessary to construe the language of their contract with reference to a new factual situation not specifically covered in the written contract.

**5.** 4 J. Appleman, Insurance Law and Practice § 2122, at 34 (relevant insurable interest is the one at the time of the loss) (1969).

**6.** See R. Keeton, Insurance Law, § 4.2(c) at 189 (1971). Because Mrs. Mann's insurable interest controls her rights under the policy, we considered whether a subsequent conveyance from the Bateses back to Mrs. Mann might have transformed the policy back to a standard owner's policy. But the reconveyance took place after the fire, and after the policy had

■ The policy had a subrogation clause which stated that the company "may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company". Subrogation against a person other than an insured is common to fire insurance contracts[7] and includes all claims which the subrogor may have against third parties for the loss in question.

Mrs. Mann asserts that the company was not entitled to subrogation of her debt claim against the Bateses and that she did not have to assist in that subrogation by signing the partial, subordinated assignment.

■ Mrs. Mann first contends that the subrogation clause refers only to tort claims. It is true that most subrogation cases involve third-party tortfeasors. But the paucity of nontort subrogation litigation is better explained by the rarity of mortgagee-only policies[8] than by a doctrinal barrier. We have unearthed examples of subrogation to contract claims[9] and the company cites examples of subrogation to a mortgage.[10]

■ We do not read the subrogation clause in this policy as referring to tort claims only. The company is entitled to be subrogated to the claims the mortgagee Mann may have had against the mortgagor Bateses. If one were to substitute a bank for Mrs. Mann in this case the relations of the parties would be more conventional, and perhaps easier to deal with as matters of insurance law.

Mrs. Mann next asserts that the right to subrogation arises only after payment is made by the company. She states that since the company did not make payment, it was not entitled to subrogation.

The company offered to pay Mrs. Mann her $15,000 immediately upon her signing of the partial, subordinated assignment. Her refusal was undoubtedly reinforced by advice of counsel that she was entitled to the insurance proceeds free of the company's claim as a subrogee. Mrs. Mann left no doubt that she disputed the company's subrogation rights when she refused to sign. But her motive—to confer a benefit upon the Bates family at the expense of her insurance carrier—however generous it may have been, was not a motive the insurance company had any duty to share.

The order of performance by the parties—when the company was to pay, either before or after Mrs. Mann signed the partial, subordinated assignment—was simply not an issue in the original dispute. We have no basis for deciding the case on that ground. The company's insistence on the assignment before it made payment may have been a breach; but then Mrs. Mann's intransigence about the company's subrogation rights also may have been a breach. We need not grade the magnitude of these blunders. The center of the dispute was the subrogation right, not the order of performance.

expired. See Part II, *infra*. Therefore, for the purposes of this case, the rights of the parties crystallized at the date of the loss, and the policy was a mortgagee-only type policy.

7. R. Keeton, Insurance Law, § 3.10, at 147–148. At p. 187, Keeton traces the doctrine that an insurer cannot have subrogation against its own insured.

8. In the standard policy, the mortgagor is an insured; so, when the insurer pays the mortgagee, any subrogation right to the mortgage could only be asserted against the mortgagor, who, as an "insured", is protected from the insurer. *See* note 6, *supra*.

9. *See, e. g., Atlantic Mutual Insurance Co. v. Cooney*, 303 F.2d 253 (9th Cir. 1962); *cf., Employers Mutual Casualty Co. v. Shepherd-Vineyard Motors, Inc.*, 189 Kan. 525, 370 P.2d 388 (1962). *But see*, Levit, *Court Denies Subrogation to Contractual Rights*, 1968 Ins.L.J. 105 (comment on *Patent Scaffolding Co. v. William Simpson Construction Co.*, 256 Cal.App.2d 506, 64 Cal.Rptr. 187 (2d Dist. 1967). Also, mortgagee subrogation is almost universally allowed. 6A J. Appleman, Insurance Law and Practice § 4071, at 195 n. 8 (1969).

10. *Commercial Standard Insurance Co. v. Hitson*, 73 N.M. 328, 388 P.2d 56 (1963); *Wriedt v. Beckenhauer*, 183 Neb. 311, 159 N.W.2d 822 (1968).

■ Mrs. Mann also recites the policy's "mortgagee obligations clause" and argues that it requires the company to discharge her *entire* mortgage interest before she must assign the mortgage or part of it to the company. Her reliance on this clause is misplaced. By its own terms, the clause applies to the former mortgagee, Mrs. Mann's bank, not to Mrs. Mann herself. That clause refers only to the mortgage in existence when the policy was written, not to any subsequent mortgage interest. *Westchester Fire Ins. Co. of N. Y. v. Norfolk Bldg. & Loan Assn.*, 14 F.2d 524 (8th Cir. 1926). The general subrogation clause, not the mortgagee obligations clause, governs the rights of the parties. And that clause clearly authorizes the company to require pro tanto assignments.[11]

## II

While this litigation was pending, the Bateses defaulted on their mortgage payments. Mrs. Mann, again on advice of counsel, took back a deed in lieu of foreclosure. Because Nevada has no antideficiency legislation, a foreclosure action would have preserved her rights against the Bateses. But when Mrs. Mann chose to take a deed in lieu of foreclosure, the deed discharged the Bateses and the mortgage debt entirely.[12]

■ The company asserts that Mrs. Mann's destruction of the rights to which the company would have been subrogated destroys its obligation to pay her as mortgagee. An insured's violation of the insurer's subrogation rights does serve as a defense which the insurer can use to avoid payment of benefits to the insured.[13] In a mortgagee-subrogation context, our court has held that destruction of the mortgage by the mortgagee defeats the mortgagee's right to recover from the insurance company. *Rosenbaum v. Funcannon*, 308 F.2d 680 (9th Cir. 1962). *See also Insurance Co. of North Amer. v. Citizens Ins. Co. of N. J.*, 425 F.2d 1180 (7th Cir. 1970). Mrs. Mann, by accepting the deed, discharged the Bateses of their debt and at the same time wiped out her insurable interest. Her claim against the insurance company could rise no higher than her claim against the Bateses. When that claim expired, her insurable interest and her rights under the policy expired.

The judgment is reversed.

---

11. The subrogation clause states that the company "may require" an assignment of rights "to the extent" payment is made by the company. The company here took a subordinated position in the outstanding claim against the Bateses and the Bates property. This position has the greatest support in precedents. *See* citations collected in R. Keeton, Insurance Law at 161 n. 11. *See also*, 6A J. Appleman, Insurance Law and Practice § 4071, at 192 (1969).

12. The Deed in Lieu of Foreclosure stated that Mrs. Mann gave as consideration $10 plus "full satisfaction of all obligations secured by the Deed of Trust * * *."

13. R. Keeton, Insurance Law at 158 n. 8 and cases collected there. 6A J. Appleman, Insurance Law and Practice § 4071, at 199 n. 15–16 (1969).