**INDUSTRIAL INDEMNITY COMPANY OF ALASKA, INC., Appellant,**

v.

**GREAT AMERICAN INSURANCE CO., Appellee.**

No. 7740.

Supreme Court of Alaska.

Aug. 24, 1984.

Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for appellant.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

OPINION

COMPTON, Justice.

This case raises a question of contribution between two insurance companies. Several issues are raised by the parties but, in view of our determination that the insureds destroyed Great American's subrogation rights, the other issues need not be addressed. We conclude that the insureds'

acts relieved Great American from any potential liability under its insurance policy.

## I.

On June 9, 1978, Great American Insurance Company issued a business protector insurance policy to Dale Murphy and Robert Solom on a commercial warehouse in Kenai. Murphy and Solom were the named insureds. The policy, which included fire coverage with a liability limit of $127,-000.00, covered the period from June 9, 1978, to June 9, 1981.

Murphy and Solom contracted to sell their interest in the warehouse to Robert and Marjorie Houser on March 22, 1979. The Housers made a cash payment and gave Murphy and Solom a promissory note in the amount of $138,173.62. The property was transferred by statutory warranty deed on March 30, 1979. The Housers executed a deed of trust securing the promissory note. The purchase agreement and the deed of trust provided, in part, that the Housers were to provide fire insurance, in an amount not less than $138,173.62, with the loss payable to Murphy and Solom.

The Housers, under their corporate name of Mar Enterprises, obtained insurance coverage from Industrial Indemnity Company of Alaska. The policy was to be effective from March 30, 1979, to March 30, 1982, and insured the warehouse in the amount of $200,000.00. Mar Enterprises was listed as the named insured. Under a separate mortgagee clause the State of Alaska, Division of Veterans Affairs, was the first mortgagee and Murphy and Solom were the second mortgagee. Both insurance policies contained "other insurance" clauses providing that, in the event there was other insurance covering the same risk, property and interest, each company would only be proportionately liable.

On May 9, 1979, the warehouse was damaged by a fire. The day after the fire Murphy and Solom met with Jerry Beltz, a Great American agent. Beltz was informed that the property had been sold and

that Industrial Indemnity had insured the warehouse. Murphy and Solom stated that they wanted to cancel their insurance as of the date of the sale, but the policy was not surrendered to Beltz. Both parties to this case assume that the insurance was in full force and effect on the date of the fire.

Murphy and Solom hired a public adjuster, who in turn retained an attorney, to assist them in adjusting the loss. The attorney concluded that the two policies were independent and that the "other insurance" clauses did not apply. He also noted that Murphy and Solom were protected under the Industrial Indemnity policy.

On July 30, 1979, the Housers gave Murphy and Solom a quitclaim deed in lieu of foreclosure and the Housers' promissory note was cancelled. All rights to insurance proceeds were assigned to Murphy and Solom. Murphy and Solom submitted their proof of loss to Industrial Indemnity on November 28, 1979. Industrial Indemnity paid $114,746.16, which it determined to be the whole loss.

Murphy and Solom filed suit against Industrial Indemnity on May 6, 1980, claiming that an additional $63,000.00 was owed. Industrial Indemnity filed a third party complaint against Great American seeking contribution under the "other insurance" clause. Both insurance companies moved for summary judgments on the third-party claim which the superior court granted in favor of Great American. This appeal followed.

## II.

Industrial Indemnity asks us to enforce the "other insurance" clauses and require Great American to contribute a proportionate share of the loss. We conclude that Great American was relieved from liability because its subrogation rights were extinguished by Murphy and Solom. The issue of whether the two contracts constitute "other insurance" is irrelevant since we cannot force Great American to contribute in the absence of liability.[1]

---

**1.** We are not faced with the question of whether

Industrial Indemnity is liable for only its pro-

■ When Murphy and Solom sold their interest in the warehouse, their insurable interest was reduced to that of a mortgagee insured. Great American admits, for the purpose of this appeal, that its policy was in full force and effect at the time of the fire. Since Murphy and Solom were left only with a promissory note from the Housers, the Great American policy clearly insured Murphy and Solom only as mortgagees.

The determinative factual issues in this case closely parallel the factual situation before the federal court of appeals in *Mann v. Glens Falls Insurance Co.*, 541 F.2d 819 (9th Cir.1976). In that case, Mrs. Mann obtained fire insurance on her house. She subsequently sold the house and received a purchase-money mortgage from the buyers. The buyers had agreed to insure the house, naming Mann as the loss-payable mortgagee, but the house burned before this could be done. The court determined "that the policy, by operation of law, had become a mortgagee-only type policy." 541 F.2d at 821 (footnote omitted).

■ Great American had a clause in its policy which subrogated the company to all rights of the insured against any person.[2] Even in the absence of a clause like this one, it has been held that, upon payment, an insurance company is subrogated to the rights of the mortgagee against the mortgagor to the extent of the payment.[3] Payment by the insurer does not extinguish the underlying debt.[4] Thus, had

Great American paid Murphy and Solom, it would have been subrogated to the insureds' rights against the Housers on the promissory note.

■ Great American asserts that it is not liable to Murphy and Solom since they cancelled the Housers' promissory note and took back a quitclaim deed in lieu of foreclosure. The Housers assigned their rights to any insurance proceeds to Murphy and Solom. Murphy and Solom took back ownership of the destroyed property, thereby extinguishing any rights they may have had as mortgagees. As the court stated in *Mann*, "[i]n a mortgagee-subrogation context, our court has held that destruction of the mortgage by the mortgagee defeats the mortgagee's right to recover from the insurance company." 541 F.2d at 823 (citations omitted). Similarly, in that case, Mann took back a deed in lieu of foreclosure which "discharged the Bateses [mortgagors] and the mortgage debt entirely." *Id.* (footnote omitted).

■ Industrial Indemnity first argues that Great American's subrogation right cannot accrue until payment is made to Murphy and Solom. "Subrogation rights vest only upon payment of the claim to the insured." *Corbin v. Aetna Life & Casualty Co.*, 447 F.Supp. 646, 652 (N.D.Ga.1978). Great American, however, is not asserting its subrogation rights but, rather, the extinguishment of liability due to the destruction of future subrogation rights. The in-

portionate share regardless of contribution by Great American.

2. The clause reads in pertinent part:
   (a) In the event of any payment under this policy the Company shall be subrogated to all the insured's rights of recovery against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.
   (b) The Company shall not be bound to pay any loss if the insured has impaired any right of recovery for loss.

3. *See* R. Anderson, Couch Cyclopedia of Insurance Law § 61.360, at 365 (rev. 2d ed. 1983) and cases cited therein.

4. This is distinguishable from a situation where the mortgagee is paid pursuant to a loss-payable clause on a contract insuring the mortgagor. In this situation the insurance company is not subrogated to the mortgagee's rights against the insurer's own insured. As the court stated in *Foshee v. Lloyds*, 619 F.2d 1104, 1110 (5th Cir. 1980):

   The insurer may not enforce a putative subrogation if the mortgagor procured the policy for his own benefit and at his own expense; a contrary result would unjustly enrich the insurer at the expense of the insured.... If, however, the insurance was purchased for the mortgagee's benefit alone, the insurer may become a subrogee of the mortgagee's rights against the mortgagor. [Citations omitted].

surance contract provided that "[t]he company shall not be bound to pay any loss if the insured has impaired any right of recovery for loss." We will not require an insurance company to pay a claim if the subrogation rights are already extinguished. As stated in *Mann*, "[a]n insured's violation of the insurer's subrogation rights does serve as a defense which the insurer can use to avoid payment of benefits to the insured." 541 F.2d at 823 (footnote omitted).[5]

■ Industrial Indemnity next argues that Great American delayed in denying coverage to Murphy and Solom and that the insureds were merely protecting themselves in a reasonable manner. In *Theodore v. Zurich General Accident & Liability Insurance Co.*, 364 P.2d 51 (Alaska 1961), the insured settled a lawsuit in violation of its insurance contract. Since the insurer refused to defend the action, also in violation of the contract, we stated that the insured "was justified in doing what it considered best to protect its interests." *Id.* at 55. The situation in the instant case is easily distinguishable. Great American had not repudiated its obligation to provide coverage prior to Murphy's and Solom's acceptance of the quitclaim deed. An insured may not act in violation of an insurance contract to allegedly protect its rights until the insurance company has acted to endanger those rights. Murphy's and Solom's acts in this case were not provoked by Great American.

■ We conclude that Great American's potential subrogation rights as a mortgagee insurer were extinguished when Murphy and Solom cancelled the promissory note. This action relieved Great American from any liability to its insured. Thus, in the context of this contribution action, the "other insurance" provisions are inapplicable. These provisions apportion liability; they do not create liability.

The judgment is AFFIRMED.

MOORE, J., not participating.

---

5. *See also* R. Keeton, Insurance Law § 3.10(c), at 159 (1971): "If the insurer has not yet paid policy benefits to the insured, the insured's violation of the insurer's subrogation rights serves as a partial or complete defense to liability for such benefits." (Footnote omitted).