21 F.3d 1114
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kevin MONAGHAN, individually, and as assignee of Tankco
Fabricating & Leasing, Inc., Maltby Tank & Barge,
Inc., Bob Birdseye, Steve Adolphsen, and
Bruce Carse, Plaintiffs-Appellants,
v.
ADMIRAL INSURANCE COMPANY; Wausau Insurance Company,
Defendants-Appellees,
v.
WAUSAU INSURANCE COMPANY, Third-party-plaintiff
v.
Rod LYNCH, Crosby, Molenda & Sisson, Robert Thunder and
Corroon & Black, Third-party-defendants.
 No. 92-35236.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 8, 1993.
Decided April 5, 1994.
 
 Before: SCHROEDER, FLETCHER and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-Appellant Kevin Monaghan ("Monaghan"), as assignee of Maltby Tank & Barge, Inc. ("Maltby") and Tankco Fabricating & Leasing, Inc. ("Tankco"), appeals from the district court's grant of summary judgment in favor of Wausau Insurance Company ("Wausau") and Admiral Insurance Company ("Admiral"). The district court ruled that Monaghan was not entitled to collect on a confessed judgment by Maltby and Tankco (collectively referred to as "M & T") in favor of Monaghan in the amount of $2,000,000. Monaghan obtained this confession of judgment by M & T in exchange for an assignment to Monaghan of M & T's claims against Wausau and Admiral. We reverse the district court's grant of summary judgment with respect to Admiral and affirm with respect to Wausau.
 
 I.
 
 3
 In 1986, Kevin Monaghan was employed as a welder's helper by Tankco. Tankco is a wholly owned subsidiary of Maltby. On May 7, 1986, Monaghan suffered an industrial injury to his left hand. On May 26, 1986, Monaghan wrote a letter to M & T, stating that he would settle his claim against Tankco for $300,000, plus payment of his medical bills and a job. At the bottom of his letter, Monaghan added:
 
 
 4
 NOTE--THIS IS NOT A FORMAL OFFER BY ANY MEANS BUT ONLY A ROUGH DRAFT OF WHAT I FEEL IS FAIR FOR ALL CONCERNED. UPON COMPLETION OF THE PROPER LEGAL INVESTIGATION, PROPER INSPECTION OF JURY DECISIONS MADE ON OTHER SIMILAR CASES IN THE STATE OF ALASKA AND UPON CONFERENCE WITH PROPER LEGAL COUNSEL I WILL SUBMIT MY FORMAL REQUEST FOR SETTLEMENT.
 
 
 5
 * * * I DO WANT TO SETTLE OUT OF COURT IF AT ALL POSSIBLE AND I AM WILLING TO DISCUSS SUCH POSSIBILITIES IN ORDER TO AVOID COURT. THANK YOU.
 
 
 6
 (CR 89 App. 1, Ex. 10 at 3.)
 
 
 7
 At the time of Monaghan's injury, M & T had insurance coverage with three insurers. First, Maltby carried a workers' compensation policy with Wausau. This policy also contained general liability coverage with a $100,000 policy limit ("Coverage B"). Second, M & T had general liability insurance with Admiral that provided $500,000 of primary coverage. Finally, M & T had $500,000 of excess insurance coverage with Jersey International ("Reliance").
 
 
 8
 After his injury, Monaghan filed a report of injury. Wausau was the insurance carrier for Maltby with respect to workers compensation claims. A Wausau agent advised the Alaska Workers' Compensation Board that the Wausau policy covered only Maltby employees, but did not cover employees of Tankco.
 
 
 9
 Upon this denial of workers' compensation benefits, Monaghan filed a personal injury suit in Alaska state court against M & T. The complaint was based on Alaska statutory law, which provides that an employer that fails to provide workers' compensation can be sued directly in tort. See A.S. 23.30.055 & 23.30.080.
 
 
 10
 M & T's general liability carrier, Admiral, retained attorney Rod Sisson to defend M & T. Sisson contacted Wausau, and asked it to confirm coverage under its workers' compensation policy. Sisson's letter noted that M & T could face extensive civil liability if Tankco did not have workers' compensation coverage.
 
 
 11
 On December 15, 1986, Wausau agreed that its policy would cover Tankco. In February 1987, Wausau accepted tender of defense and retained Sisson as its attorney.[1] Monaghan made a $1,000,000 offer to settle the case that same month. Neither insurer responded to the offer.
 
 
 12
 Wausau moved for summary judgment in the state court action, arguing that Monaghan's action was barred by the exclusive remedy provisions of Alaska's workers' compensation statutes. M & T's motion was denied on May 19, 1988. The state court judge ruled that Maltby and Tankco were separate entities and that although Maltby had workers compensation coverage, no workers' compensation coverage existed for Tankco at the time of Monaghan's injury.
 
 
 13
 After the summary judgment ruling, Monaghan made a $955,000 settlement offer. The offer was forwarded to Admiral and Wausau but was rejected by the insurers.
 
 
 14
 On June 27, 1988, Wausau's independent counsel, William Brittain, recognized that the state court decision created a potential conflict of interest between M & T and Wausau and suggested that M & T should be allowed to appoint its own counsel to represent it in the state court action. Sisson withdrew as M & T's attorney and M & T selected the firm of Hughes, Thorsness, Gantz, Powell & Brudin as new defense counsel. The independent counsel was paid by Wausau but was not controlled by Wausau.
 
 
 15
 On October 12, 1988, M & T, through attorney David Thorsness, wrote Admiral requesting it to confirm or deny coverage. Admiral responded that Wausau had accepted responsibility for Monaghan's action and that M & T's policy contained several policy exclusions that were applicable to M & T's situation. On January 19, 1989, Admiral reaffirmed its coverage exclusions, but also offered to defend M & T in any possible way, including paying the costs of defense.
 
 
 16
 Admiral then filed a declaratory judgment action in federal district court, seeking a judgment that Admiral had no liability for Monaghan's claim against M & T on the alternative grounds that Monaghan's claim fell within policy exclusions or that Wausau had assumed the obligation to defend and indemnify M & T and was estopped from denying this. Admiral moved for summary judgment against M & T. This motion was pending at the time Monaghan settled with M & T.
 
 
 17
 On June 22, 1989, Wausau offered to pay its policy limits of $100,000 in settlement of Monaghan's claims. This offer was extended to include costs, prejudgment interest, and attorneys' fees. M & T's independent counsel, Thorsness, notified Wausau and Admiral that Monaghan had suggested that M & T confess to judgment in return for a covenant not to execute the judgment against M & T. Both Admiral and Wausau responded that such a settlement would trigger policy defenses.
 
 
 18
 On July 7, 1989, a settlement conference was held in the state court action. Monaghan informed M & T that he would accept $800,000 in return for dismissal of the action against all parties, or he would accept a $2,000,000 confession of judgment from M & T. M & T requested sufficient authority to accept the $800,000 offer. Admiral stated it did not wish to make a settlement offer. M & T then confessed to judgment in the sum of $2,000,000. In return for Monaghan's covenant not to execute the judgment against M & T, M & T assigned their claims against Admiral and Wausau to Monaghan.
 
 
 19
 Monaghan brought an action in federal district court as an assignee of M & T against Admiral and Wausau seeking damages in the amount of the $2,000,000 confession of judgment plus interest and attorneys' fees based on theories of bad faith refusal to settle, negligence, breach of fiduciary obligations, and bad faith defense of the underlying litigation. Monaghan also included direct claims against Wausau for negligent misrepresentation and fraudulent misrepresentation made to him. Monaghan, Wausau, and Admiral, made cross-motions for summary judgment. The district court granted summary judgment in favor of Wausau and Admiral, ruling that, as a matter of law, M & T had breached their insurance contracts with Admiral and Wausau by entering into the confession of judgment without the consent of the insurers. The court ruled that because Admiral and Wausau had not engaged in any conduct which would excuse the breach, M & T's breach made the policies unenforceable. The court also granted summary judgment for Wausau on Monaghan's direct claims. Monaghan timely appealed to this court, challenging the grant of summary judgment and also claiming that summary judgment should have been granted in his favor.
 
 
 20
 The district court had jurisdiction pursuant to 28 U.S.C. Secs. 1332 and 2201. We have jurisdiction over the district court's final decision pursuant to 28 U.S.C. Sec. 1291.
 
 
 21
 Because this is a diversity case, Alaska's substantive insurance law governs. West v. State Farm Fire & Cas. Co., 868 F.2d 348, 350 (9th Cir.1989). The district court's interpretation of state law is reviewed de novo. Id. We review a grant of summary judgment de novo. Id.
 
 II.
 
 22
 Because Monaghan is suing as an assignee of M & T, we must first determine whether an insured such as M & T can assign a cause of action against its insurer for bad faith without first suffering an adverse judgment or paying a settlement. We conclude that such a claim is assignable under Alaska law.
 
 
 23
 Continental Ins. Co. v. Bayless & Roberts, Inc., 608 P.2d 281, 293 (Alaska 1980), controls this issue. In Bayless & Roberts, the insured, Bayless and Roberts (B & R), entered into a consent judgment with the claimant for $618,000 in return for which the claimant agreed not to execute the judgment against any assets of B & R except for B & R's recovery against its insurance company, Continental. Id. at 286. B & R agreed to prosecute its claim against Continental and to assign any proceeds of that claim to the claimant. The court held that Continental had acted negligently and was liable for the settlement even though the amount exceeded Continental's policy limits. Id. at 293. The court noted that the liability of B & R was based on a settlement with the claimant rather than a judgment on the merits, id. at 293 n. 20, and reasoned that the insurance company was not automatically liable for the full amount of the settlement regardless of the amount. Id. Instead, the insurer is liable only for a settlement that is reasonable under the circumstances. Id. (approving of jury instructions stating that "[a] reasonable settlement ... is one which under the circumstances existing at the time that it was entered into was made as ordinary or reasonable prudence and caution might dictate to be advisable.").
 
 
 24
 Admiral and Wausau contend that we should adopt the holding of Smith v. State Farm Mut. Auto. Ins. Co., 7 Cal.Rptr.2d 131 (Cal.Ct.App.1992), in which a California court held that a judgment against an insured or a payment by an insured in settlement of a claim is a prerequisite to an assignment of the insured's claim against the insurer. Id. at 137. We decline to do so on the grounds that in Bayless & Roberts the Alaska Supreme Court condoned a settlement similar to Monaghan's and thus implicitly rejected any requirement that an adverse judgment or a payment of settlement exist before an insured may assign a cause of action for bad faith against its insurer.
 
 
 25
 We recognize that under a settlement such as the one in this case, the insured's liability is not litigated in an adversarial context. Theoretically this permits the claimant and the insured to act as allies and removes the incentive for these parties to reach a reasonable settlement. See Smith, 7 Cal.Rptr.2d at 136-37. However, Bayless & Roberts specified that under circumstances similar to this case the insurer is liable only for a reasonable settlement. See 608 P.2d at 293 n. 20. The requirement that a settlement be reasonable alleviates the concern in Smith that claimants and insureds will collude and agree to unreasonable settlements.
 
 
 26
 We therefore conclude that under Alaska law M & T did not have to suffer an adverse judgment or pay Monaghan a settlement before it could assign its claim of bad faith to Monaghan. If either insurer is held liable to Monaghan on the assigned claim, however, we must remand this issue to the district court to determine whether the confession of judgment in the amount of $2,000,000 was reasonable under the circumstances.
 
 III.
 
 27
 Generally speaking, a breach by an insured of its obligations under its policy precludes the insured from recovering under that policy.[2] Sargent v. Johnson, 551 F.2d 221, 232 (8th Cir.1977) (insured's breach of cooperation clause precludes recovery under the policy); Industrial Indem. Co. v. Great Am. Ins. Co., 686 P.2d 1216, 1219 (Alaska 1984). However, the insured may protect itself by entering into a settlement with the injured claimant if the insurer first breaches one of its contractual duties under the policy. Theodore v. Zurich Gen. Accident & Liab. Ins. Co., 364 P.2d 51, 55 (Alaska 1961). The insured's right to enter into a settlement is qualified: it "may not act in violation of an insurance contract to allegedly protect its rights until the insurance company has acted to endanger those rights." Great Am. Ins. Co., 686 P.2d at 1219.
 
 
 28
 Both Admiral's and Wausau's insurance policies contained "cooperation" clauses, which precluded M & T from settling a claim without the insurers' consent. Ordinarily, M & T would breach these policies when it settled the claim with Monaghan without the consent of Admiral or Wausau. Because M & T did breach the conditions of its policies, the underlying question in this case is whether either Admiral or Wausau first breached a duty to M & T under the policies that endangered M & T's rights such that M & T's settlement with Monaghan was justified.
 
 
 29
 "The fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing." O.K. Lumber Co. v. Providence Washington Ins. Co., 759 P.2d 523, 525 (Alaska 1988); Guin v. Ha, 591 P.2d 1281, 1291 (Alaska 1979). Alaska law provides that an insurer has a duty to defend its insured "whenever a complaint states a cause of action within, or potentially within, the policy coverage." Afcan v. Mutual Fire, Marine & Inland Ins. Co., 595 P.2d 638, 645 (Alaska 1979). If the insurer breaches its duty to defend, it is liable for a judgment in excess of its policy limits. Bayless & Roberts, 608 P.2d at 293.
 
 
 30
 Moreover, the Alaska Supreme Court has stated
 
 
 31
 that an insurer, defending an action against the insured, is bound to exercise that degree of care which a man of ordinary prudence would exercise in the management of his own affairs, and if the insurer fails to meet that standard it is liable to the insured for the excess of the judgment over the policy limits, irrespective of fraud or bad faith. That is to say, an insurer undertaking a defense must exercise not only good faith, but also ordinary care and reasonable diligence and caution.
 
 
 32
 Bayless & Roberts, 608 P.2d at 293 (emphasis added) (quoting 7C John A. Appleman, Insurance Law & Practice Sec. 4687 at 179 (Berdal ed. 1979)). Thus, Alaska courts do not require bad faith on the part of the insurer in order to hold it liable for failing to meet its duty to defend; rather, the insurer is held to a standard of ordinary care and reasonable diligence.
 
 
 33
 The insurer's duty to defend includes a duty to inform its insured of all settlement offers and of the possibility of excess recovery by the injured claimant. O.K. Lumber Co., 759 P.2d at 525. The insurer also has a duty to consider settlement offers in good faith. Guin, 591 P.2d at 1291. If the insurer breaches its duty, and the insured suffers a judgment in excess of its insurer's policy limits, the insurer is liable for the judgment even if the judgment exceeds its policy limits. See 7C John A. Appleman, Insurance Law & Practice Sec. 4711 at 381 (Berdal ed. 1979).
 
 
 34
 Therefore, under Alaska law, if either Admiral or Wausau breached either its duty to defend or its duty to consider settlement offers in good faith and in doing so endangered M & T's rights under its policy, then the insurer's breach of its duties released M & T from its covenant of cooperation with respect to entering a settlement agreement. Theodore, 364 P.2d at 55; Great Am. Ins. Co., 686 P.2d at 1219.
 
 IV.
 
 35
 We conclude that Admiral did breach its duty to defend M & T and to engage in settlement negotiations such that M & T was released from its covenant of cooperation with respect to Admiral. As the primary insurer of M & T, Admiral had a duty to defend M & T. This duty to defend included the duty to inform M & T of settlement offers and to negotiate the best settlement possible for M & T. O.K. Lumber Co., 759 P.2d at 525; Guin, 591 P.2d at 1291; Continental Casualty Co. v. United States Fidelity & Guaranty Co., 516 F.Supp. 384, 389 (N.D.Cal.1981) (stating that "if the carrier's obligation to 'evaluate the settlement offer as though the carrier itself were liable for the full amount of the claim' is to be meaningful, it must carry with it an obligation at least to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available and make an informed evaluation of the settlement demand.").
 
 
 36
 In this case several of Monaghan's settlement offers were made after the state court declined to grant summary judgment for M & T in the state case. The state court ruled that Tankco, as a distinct legal entity from Maltby, had clearly failed to comply with state law requiring a certificate that the employer has obtained workers' compensation insurance for its employees. Moreover, the third settlement offer was made after a second state court judge denied a renewed motion for summary judgment, ruling as a matter of law that there was no workers' compensation coverage for the accident and that Maltby and Tankco are separate entities. C.R. 89, App. 1, Ex. 30. At this point, the issues remaining for trial were those typical to a personal injury action, with the burden of proof on M & T to disprove a presumption that it had acted negligently. M & T's independent counsel believed that its client faced a high probability of losing at trial and of being subjected to significant tort liability at trial.
 
 
 37
 Under these circumstances, where its insured faced a significant probability of liability for tort damages in excess of the policy limits of its insurers, Admiral had a duty to carefully consider Monaghan's settlement offers and to negotiate in good faith on behalf of M & T. Admiral did neither. In fact, Admiral has presented no evidence that it entertained any of Monaghan's offers or that it was willing to settle at all.
 
 
 38
 Admiral argues that it had no duty to settle because Monaghan never made a settlement offer that was within Admiral's policy limits. Although Admiral correctly states that Monaghan never made an offer within Admiral's policy limits, Admiral incorrectly assumes that an insurer has no duty to settle unless a settlement offer is made within policy limits. In fact, an insurer can be liable for bad faith refusal to settle if a settlement offer is made in excess of policy limits and the insured party is willing and able to pay the amount of the settlement offer in excess of the insurer's policy limits. Continental Casualty Co., 516 F.Supp. at 388; Robert E. Keeton, Insurance Law Sec. 7.8(c) at 512, 513 (1971) ("Even though a settlement demand exceeds the policy limit, the duty to settle can nevertheless be invoked if the insured is willing to contribute the difference between the policy limit and the total settlement demand.").
 
 
 39
 In this case, M & T had combined general liability insurance of $1,100,000 under policies with its three insurers and was clearly able itself to pay the excess, if any, of Monaghan's three settlement offers of $1,000,000, $955,000, and $800,000.[3] See General Accident Fire & Life Assurance Corp. v. American Casualty Co., 390 So.2d 761, 765 (Fla.Dist.Ct.App.1980) ("When an insured is not judgment proof or when an excess insurer exists, absence of an offer to settle within policy limits is not dispositive of the question of bad faith on the part of the primary insurer.") (emphasis added). Thus, the fact that Monaghan never made an offer within Admiral's policy limits is not dispositive of whether Admiral breached its duty. Monaghan did make an offer within feasibility limits and Admiral has not cited to any portion in the record suggesting that it communicated Monaghan's offers to Reliance to see if Reliance was willing to pay the excess or that it considered Monaghan's offer in any way.[4]
 
 
 40
 Admiral also contends that a duty to consider settlement offers arises only when the insurer has control of the defense. Because Wausau was in control of the defense, Admiral contends that it had no duty to consider settlement offers. We disagree. The conflict of interest between insurer and insured arises in cases like this one because the insured has an interest in settling within policy limits while the insurer is only interested in settling when the relationship between the settlement offer and the policy limits is mathematically favorable. Merritt, 110 Cal.Rptr. at 519. This conflict of interest remains even where the insured has independent counsel because the independent counsel cannot force the insurer to accept a settlement offer that it does not wish to accept. Id.
 
 
 41
 In this case, even though Admiral did not control the day-to-day decisions of the litigation, Admiral was still informed of the settlement offers and M & T's independent counsel was still required to obtain settlement authority from Wausau, Admiral, and Reliance. M & T's independent counsel had no authority to engage in settlement negotiations without the consent of the insurers. Under these circumstances, Admiral cannot deny that it had a duty to consider settlement offers, to grant settlement authority to M & T's counsel, and to conduct good faith settlement negotiations on behalf of its insured. Continental Cas. Co., 516 F.Supp. at 389.[5]
 
 
 42
 In summary, we conclude that Admiral breached its duty to defend M & T under a reservation of rights. Because Admiral has breached its duty to effect settlement, it may be obligated to pay the entire amount reflected in the confession of judgment, and not just its policy limits. However, Admiral is only liable to pay the whole settlement amount if it is reasonable. Bayless & Roberts, 608 P.2d at 293 n. 20.
 
 
 43
 We remand Monaghan's claim against Admiral to determine whether the settlement is reasonable and, if it is not reasonable, to determine what amount would be reasonable. The reasonableness of the settlement does not turn merely on the degree of injury suffered by Monaghan, but also must be evaluated in light of the circumstances faced by M & T at the time the settlement was entered into.
 
 
 44
 Thus, the court should consider that at the time of settlement, M & T faced a high probability of losing at trial and being subjected to tort liability that might substantially exceed its insurance coverage. At this time, the state trial court had already ruled as a matter of law that there was no workers' compensation coverage for the accident as required by state law. M & T was also uncertain as to the extent Admiral and Reliance would assume responsibility for any judgment even though within policy limits. Had M & T settled for $800,000, all the risks of recovery from the insurance companies (except Wausau, which had offered its $100,000 policy limit) would have been on M & T. By contrast, the $2,000,000 settlement figure carried the added advantage of removing all risk of liability from M & T. Monaghan, on the other hand, obviously would require a substantially higher settlement figure to assume the risk of looking only to the insurance companies and not to M & T for payment. M & T, rather than going to trial where it faced the probability of being subjected to uncovered tort liability, or entering into a settlement that imposed tort liability on it and also the risk of collection from the insurance company, accepted a settlement that released it from liability. The question is whether the price it agreed to was reasonable under these circumstances.
 
 V.
 
 45
 We conclude that, unlike Admiral, Wausau did not breach any duty to M & T under its policy. Therefore, Wausau was relieved of any obligation to pay under its insurance policy by M & T's breach of the cooperation clause.
 
 
 46
 Monaghan argues that Wausau breached its duty to defend because Wausau did not inform M & T that Wausau's policy "supplanted" Admiral's policy when Wausau accepted the tender of defense. We conclude that this argument is without merit. Monaghan has cited no authority suggesting that Admiral would be relieved of liability under the policy merely because Wausau agreed to provide M & T's defense.
 
 
 47
 Monaghan also contends that Wausau breached its duty to defend because it secretly withheld its intent to pay only up to its own policy limits. This argument is also without merit. The policy limit is clearly listed in Wausau's policy, (C.R. 87 Ex. D.), and it is axiomatic that insurance companies intend to cover only up to the limit of their insurance policies.
 
 
 48
 Monaghan also alleges that Wausau breached its duty to defend because it asserted a policy defense and retained control over the defense of the case. Monaghan cites to Bayless & Roberts, in which the Alaska Supreme Court held that an insurance company must either waive its potential policy defense and defend its insured unconditionally, or reserve its right to disclaim coverage based on a policy defense and give up control of the defense. 608 P.2d at 291. Monaghan's reliance on Bayless & Roberts is misplaced because this case applies only when the insurance company tries simultaneously to control defense of the case and to disclaim coverage under the policy. Id. at 291. Wausau did not claim any policy defense while it was defending M & T, nor did it claim a policy defense while paying for M & T's independent counsel. Wausau gave an unconditional defense during the period it controlled M & T's defense and it was only after M & T settled with Monaghan that Wausau claimed a policy defense. Thus, the predicate to the applicability of the Bayless & Roberts rule, control over the insured's defense, was not present during M & T's state court defense.[6]
 
 
 49
 Finally, Monaghan contends that Wausau breached its duty to respond to reasonable settlement demands. Monaghan first contends that Wausau breached its duty to settle because it did not respond to Monaghan's "offer" to settle for $300,000. However, as we noted above, the district court correctly ruled that Monaghan's letter could not be construed as a binding offer to settle.
 
 
 50
 More importantly, Wausau tendered its policy limits in favor of settlement prior to trial. This tender included costs, interest, and attorneys fees as required by Alaska Court Rule 82. Under Alaska law, if an insurance company believes there is a significant risk that a person's claim may exceed its policy limits, then the insurance company has a duty to tender its policy limits as a settlement offer. Schultz v. Travelers Indem. Co., 754 P.2d 265, 266-67 (Alaska 1988) (per curiam). Because Wausau did tender its policy limits prior to trial, although somewhat belatedly, we conclude that the district court correctly ruled that Wausau did not breach its duty to settle.
 
 VI.
 
 51
 Monaghan also brought two direct claims for negligent misrepresentation and fraudulent misrepresentation against Wausau. Monaghan bases both of his claims primarily on the deposition of George Youngclaus, a Wausau claims supervisor.
 
 
 52
 The elements of negligent misrepresentation are: (1) the party who allegedly made the misrepresentation must have made the statement in the course of his business, profession or employment; (2) the representation must be false; (3) the injured party must have justifiably relied on the false information; and (4) "the accused party must have 'failed to exercise reasonable care or competence in obtaining or communicating the information.' " Bubbel v. Wien Air Alaska, Inc., 682 P.2d 374, 380 (Alaska 1984) (citations omitted). To establish a claim for fraudulent misrepresentation, Monaghan must also establish that the person who made the statement knew that the statement was false and intended to make a misrepresentation of fact. Id. at 381.
 
 
 53
 The district court correctly ruled against Monaghan because it is not clear that misrepresentations were made by Youngclaus and, even if there were misrepresentations, Monaghan has failed to demonstrate that he justifiably relied on any of these statements. Monaghan contends that Wausau led him to believe that Wausau would pay any judgment Monaghan recovered without regard to its policy limits. However, Youngclaus made no representations that Wausau would cover Monaghan's judgment without limit. Instead, Youngclaus testified that Wausau had accepted the tender of defense, which was true. Youngclaus also stated that he believed Monaghan's claim was a worker's compensation claim. See C.R. 87, Ex. J at 5 (stating that coverage was with Wausau under its workers' compensation policy). Contrary to Monaghan's assertions, when asked if Wausau was assuming liability if the district court determined that Monaghan's claim was not a workers' compensation claim, Youngclaus merely indicated his belief that the action was a worker's compensation case:
 
 
 54
 Q. No matter what? Wausau pays the damages no matter what, whether it's workers' comp or general liability?
 
 
 55
 A. Well, it isn't general liability.
 
 
 56
 C.R. 87, Ex. J at 7 (emphasis added). When pushed further as to whether Admiral would be "off the hook" regardless of what happened, Youngclaus stated, "I'm not sure I can answer that. I really can't say that I would know that for sure. It would seem to me, in my opinion, that they would be off the hook." CR 87, Ex. J, at 29.
 
 
 57
 In summary, during his deposition Youngclaus never stated that Wausau would pay without regard to its policy limits. In fact, no one discussed policy limits during Youngclaus's deposition. Youngclaus did state that Wausau was providing coverage under Coverage B of its policy, and Coverage B of the Wausau policy clearly states that the policy limit is $100,000. Even when Youngclaus answered that Admiral might be "off the hook," he clearly qualified this statement by saying that he did not know for sure and that he did not think he could answer the question. As such, it is not a representation of Wausau's position regarding the extent of its coverage.[7]
 
 
 58
 Even if misrepresentations were made, Monaghan could not have justifiably relied on Youngclaus's deposition statements to assume Wausau would cover his claim without limit. Whether Wausau covered the claim or Admiral covered the claim should have been immaterial to Monaghan. Assuming he won a judgment, he would be paid by M & T. As long as M & T was not judgment proof either because of inadequate net worth or insurance coverage, Monaghan had no concern as to the actual source of the payment. M & T is the party that would be concerned about who indemnified it.
 
 VII.
 
 59
 We hold that Admiral breached its duty to attempt to settle on M & T's behalf and that this breach released M & T from its covenant of cooperation such that it was entitled to enter into the confession of judgment with Monaghan. Wausau did not breach any duty under its policy with M & T. The district court's grant of summary judgment with respect to Wausau is affirmed and the grant of summary judgment with respect to Admiral is reversed. Monaghan is entitled to summary judgment against Admiral as to liability, the amount of damages remanded for further proceedings consistent with this opinion.
 
 
 60
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Monaghan and Admiral contend that at this time Wausau accepted tender of the defense and agreed to pay any damages that might be awarded, even if the damages fell under general liability and not workers' compensation. They rely primarily on the deposition testimony of George Youngclaus, a Wausau claims supervisor
 
 
 [2]
 Because Monaghan is suing as an assignee of M & T, Monaghan's claims against Admiral and Wausau are subject to any defenses that Admiral or Wausau could have used against Monaghan's assignors, M & T. See Restatement (Second) of Contracts Sec. 336
 Monaghan also brought two direct claims against Wausau for negligent and fraudulent misrepresentation. These claims are discussed in Section VI below.
 
 
 [3]
 Monaghan claims that he made an offer to settle for $300,000 soon after the accident. However, the district court correctly ruled that Monaghan's letter was not a binding offer to settle. The letter clearly stated that "[t]his is not a formal offer by any means." (C.R. 89, App. 1, Exh. 10, at 3). The letter also stated that Monaghan intended to perform a legal investigation, to consult with legal counsel, and to inspect jury decisions in similar cases before submitting a formal settlement offer. Id
 
 
 [4]
 Even if Monaghan had not made an offer within the combined policy limits held by M & T, Admiral still would have had a duty to determine if M & T were willing to contribute to the excess settlement. In Merritt v. Reserve Ins. Co., 110 Cal.Rptr. 511 (Cal.Ct.App.1973), a California court considered what factors are relevant to resolving the insurer's obligations when settlement offers exceed policy limits:
 In deciding whether the insurer's refusal to settle constitutes a breach of its duty to exercise good faith, the following factors should be considered: the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; ... the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; the amount of financial risk to which each party is exposed in the event of a refusal to settle; ... and any other factors tending to establish or negate bad faith on the part of the insurer.
 
 
 [110]
 Cal.Rptr. at 523 (citations omitted). When the insurer fails to ascertain whether its insured is willing to make the contribution required by the demand that is above policy limits, then the demand is presumed to fall within the insured's feasibility limits, thus creating a conflict of interest between the insurer and the insured and activating the insurer's duty of good faith. Continental Casualty Co., 516 F.Supp. at 389
 
 
 [5]
 Admiral argued before the district court that it was not required to defend M & T because Monaghan's claim against M & T was not covered by Admiral's policy. Specifically, Admiral referred to two coverage exclusions in its policy with M & T--a workers' compensation exclusion and an employee exclusion--and argued that Monaghan's claims fall within these exclusions. Admiral does not appear to raise this issue on appeal and actually concedes that if a settlement offer had been made within its policy limits, Admiral would have had an obligation to consider that offer in good faith. (Admiral's Brief at 25). The existence of these exclusions did not relieve Admiral of its duty to defend under a reservation of rights until the question of coverage was resolved against Monaghan. Afcan, 595 P.2d at 645 (stating that duty to defend exists whenever a complaint states a cause of action "potentially within" the policy coverage)
 
 
 [6]
 Even if Wausau had reserved a policy defense during the time Thorsness represented M & T, Wausau did not breach its duty to defend. Soon after the state court denied M & T's motion for summary judgment, Wausau encouraged M & T to obtain independent counsel and paid for the counsel. Bayless & Roberts noted that an insurance company may reserve a policy defense if it offered its insured "the right to retain independent counsel to conduct his defense, and agree to pay all the necessary costs of that defense." 608 P.2d at 291 n. 17; see also CHI of Alaska, Inc. v. Employers Reins. Corp., 844 P.2d 1113, 1115-19 (Alaska 1993) (affirming the holding of Bayless & Roberts and applying same standards to cases involving coverage defenses)
 
 
 [7]
 Monaghan also bases his claims for misrepresentation on the fact that Wausau did not expressly reply to his letter of February 25, 1987, in which he asserted his understanding that Wausau had agreed to fully indemnify M & T. This failure to respond is not sufficient to support a claim of misrepresentation